107    41|
154   ³645|

## PABST BREWING CO. v. LUEDERS.

1. SETTLEMENT—WHEN CONCLUSIVE.
   Payment in full, without reservation, of an account for goods purchased, precludes the buyer from subsequently asserting that the goods were not merchantable, or that he was entitled to a credit for a shortage in packages or for expense of cartage.

2. SET-OFF—ACTION BY ASSIGNEE.
   In an action upon an account by one holding a naked assignment thereof, charges existing against the assignor at the time of the assignment are available to the defendant by way of set-off to the amount of the debt assigned only, and judgment against the plaintiff for the excess is unauthorized.

3. ACCOUNT STATED—ACQUIESCENCE.
   The failure of a debtor to object within a reasonable time to monthly statements rendered to him amounts to an admission by him that the account is correctly stated.

4. TRIAL—ARGUMENTS OF COUNSEL.
   A statement by plaintiff's counsel characterizing the defense interposed as "audacious" does not justify defendant's attorney in arraigning plaintiff as a moneyed corporation, intent upon crushing the defendant.

5. EVIDENCE—MEMORANDA.
   *Memoranda* purporting to show items of shortage in goods purchased are inadmissible in evidence in the absence of testimony to prove their correctness.

Error to Muskegon; Russell, J.   Submitted October 23. 1895.   Decided November 5, 1895.

*Assumpsit* by the Pabst Brewing Company against Henry Lueders for goods sold and delivered.   From a judgment for defendant under his claim of set-off, plaintiff brings error.   Reversed.

*J. E. Turner* and *Brown & Lovelace*, for appellant.

*Arthur Jones*, for appellee.

McGRATH, C. J.   Plaintiff brings this action to recover a balance of $106.51 for beer shipped by plaintiff to defendant from Milwaukee, Wis., from December 16, 1892, to January 30, 1894, and, as assignee of the Falk, Jung & Borchert Brewing Company, for a balance of account claimed to be due to that company from defendant for beer furnished from October 26, 1891, to October 21, 1892, making a total of $895.51.   Defendant gave notice of setoff and of recoupment, and recovered the sum of $208.20. Defendant's counterclaim was made up of a charge of $812 for cartage of empties from defendant's place of business to the railroad depot at Muskegon, a charge of $1,028.88 for sour beer and a shortage in packages, and a further charge of $220 for work expended in connection with the sour beer.   Of the charge for cartage, $428.50 arose during the dealings with Jung & Borchert, $318.50 while dealing with the Falk, Jung & Borchert Brewing Company, and $65 since the consolidation of the Falk, Jung & Borchert Brewing Company with the plaintiff corporation.   The other items are alleged to have arisen during the dealings with the Falk, Jung & Borchert Brewing Company and plaintiff.

Defendant's testimony tended to show that he began dealing with Jung & Borchert November 17, 1881, under a verbal contract, by the terms of which defendant was to be furnished beer at a given price per barrel, free of charge for freight and cartage, at his place of business in Muskegon, and that he was also to have deducted the cost of the cartage of the empty barrels to the railroad depot in Muskegon; that the Falk, Jung & Borchert Brewing Company succeeded Jung & Borchert in 1888, and that plaintiff succeeded the Falk, Jung & Borchert Brewing Company in 1892; that the dealings had been continuous under the contract, save that the price of beer had varied from time to time.

The assignment to plaintiff was a naked one, and there is no testimony tending to show that plaintiff ever

assumed the liabilities of Jung & Borchert, or of the Falk, Jung & Borchert Brewing Company, or that the alleged contract was ever assumed or recognized by plaintiff, or that the alleged contract was ever renewed, or that defendant had not full knowledge of the changed proprietorship. Jung & Borchert deny that they ever agreed to pay the item of cartage. At least three times after the Falk, Jung & Borchert Brewing Company succeeded to the business, viz., June 10, 1891, September 7, 1891, and October 26, 1891, defendant paid his account in full, and a receipt in full was given to him. Defendant says:

" I paid Jung & Borchert what they claimed I owed them. Every time they gave me receipts in full. I don't know how many times that was. I spoke to them about the expenses when I paid them money. I sent my money generally. The first time was when I met Mr. Borchert in Falk, Jung & Borchert's office. I made a payment that day. I paid them all they claimed I owed them that day. I deducted for a keg that I returned, for freight, telegraphing, and exchange; nothing else to my knowledge. I didn't deduct for carrying the empties at that time because they wouldn't settle with me. I settled with them, and got a receipt in full for that. I was not going to sue them at that time for what they owed me for carrying empties. It was after that. They never paid me anything for carrying empties, and I kept paying them right along all that they claimed I owed them, and I never deducted anything for carrying empties. I never charged Jung & Borchert for sour beer. There was so little of it that I thought it wouldn't be necessary. The first settlement I made was June 10, 1891, with Falk, Jung & Borchert. I paid them $1,024.68. I had some bills with me for freight and drawage. I took them out. I don't know about telegraph bill. I don't know whether I took anything out for spoiled beer. I was in Milwaukee, and paid them money. I did not take anything out for drawing or carrying empties.     *     *     *     For 10 years, from 1881 to 1891, I never insisted to Mr. Falk or Mr. Borchert, or rendered them any statement of their account with me, as regards drawing these empties or for spoiled beer. I kept on paying what they claimed was due to them from

me, and taking receipts in full. I paid them because I thought I owed them the account. When I was there in June, I had a talk with Borchert about the spoiled beer. I says, 'We are getting a great deal of sour beer.' He says, 'You shan't lose anything on spoiled beer. We will make that all right.' No one else was present. That was after I paid the bill. I didn't say anything to him at the time I paid the bill. I can't tell whether there was anything deducted at that time for spoiled beer. After this visit in June, I was there again in July. I made a payment at that time to Mr. Borchert. I took a receipt in full. Every time I paid one of these bills I took out the freight; sometimes for telegraphing and drawage; but I never took out anything for the cartage of empties on any of these bills. The next time I went there was when I visited the Pabst Brewing Company. I paid a little over $300 at that time to Mr. Best. I had a talk also with Mr. Pabst. Freight and drawage is all that was taken out of that bill. When they shipped goods they would most always send by mail one of these bills, and I would put my figures on for freight and drawage, and then send the bill back to the office; and what I paid on these bills I expected they would deduct, and send me a receipt for it; and that is what they did. I believe that is true of all these bills right here."

Defendant insists that, when he settled the June account, he spoke about the cartage charge, and that Borchert stated that they would settle it afterwards, and that there was something said at the same time about shortage and stale beer; but twice after this time defendant remitted from Muskegon the amount of his account in full, and receipts in full were forwarded to him.

The account of the Falk, Jung & Borchert Brewing Company starts with October 26, 1891. It aggregates $5,240.24. The last two invoices, dated September 12 and October 21, 1892, amounted to $698.75, and the last two payments, dated September 12th and October 20th, aggregated $800, leaving a balance due of $789.

On September 7, 1891, the Falk, Jung & Borchert Brewing Company wrote defendant as follows:

" We are in receipt of your favor of recent date, covering draft in settlement of our statement of September 1st, for which please accept our thanks. Inclosed please find receipt."

Plaintiff's proofs tended to show that statements of account were sent defendant on the 1st of every month from November 1, 1891, down to the close of the dealings. Defendant denies the receipt of these statements, but admits having received an invoice of each shipment made during this period, some 32 in number. During the same period he made some 24 payments, aggregating, with freight and other charges and allowances, over $8,000. No statement including any of the items now claimed has ever been presented to either Jung & Borchert, the Falk, Jung & Borchert Brewing Company, or plaintiff. Although defendant visited the parties frequently, although the correspondence between the parties is shown, no mention of any unsettled claim for cartage, or for current cartage, or of an unsettled claim against the Falk, Jung & Borchert Brewing Company, appears anywhere. Yet during this entire period offsets were claimed for freight and for beer returned, items thereof were presented to the parties, and the amounts allowed to defendant. Defendant says that he received invoices, and that—

" When I received the bill, and went to pay for the beer, and send the bill back to them, I gave them the items on the bill which I paid in advance for the beer, and then they sent them back to me the second time. I put on the bill drawage, telegraph, exchange, and, I presume, some sour beer, when there was any. Then I returned them to the Pabst Brewing Company with my draft. They receipted them, and sent them back."

The letters to defendant from August 8, 1890, to May 2, 1893, show that defendant had, in April, 1892, made a complaint as to the size of the half barrels, to which the Falk, Jung & Borchert Brewing Company replied:

" As to the size of our half barrels, we desire to say that, although there may be some old ones which are a

little bit too small, there are others which contain more than the required quantity; and, if you take it in the whole, you certainly get the measure you are entitled to."

That something had been said by defendant with reference to stale beer, but the reply was:

" Our beer is giving good·satisfaction, and we do not understand why you should have trouble, unless it is that you do not give it proper care, or keep the same on hand too long. If the beer is properly handled, and sold in due time, there should be no cause for complaint."

Whenever defendant made any specific claim to an allowance, it was disposed of at the time, and invariably allowed. Defendant continued to order and receive beer for years after these complaints were made. All the beer received by defendant prior to the 1st of August, 1892, was actually paid for within 90 days from that date. On the 1st of September, 1892, defendant was charged with $4,541.49. His total credits on the Falk, Jung & Borchert Brewing Company account amount to $4,451.24. The last four charges made on that account were, August 16, 1892, $406.25; August 19, $35; September·12, $406.25; and October 21, $292.50; and the balance due on the account is $789. Defendant explains that he generally took the invoices, entered upon them his counter charges, and sent the invoices back with a draft for the balance. He continued to do this generally through the dealings with plaintiff, and the payments made after October 20, 1892, were credited upon shipments made by plaintiff. The balance of the account for beer shipped by plaintiff is but $106.51, and the last shipment amounted to $100. It will thus be seen that there are practically but three or four shipments that have not been actually paid for.

There is absolutely no testimony tending to show that there was any reservation of a single item from any settlement, except that defendant says that the item of cartage on empties was excepted in the settlement made June 10, 1891. There was no reservation as to any other items at that time, and none at the time of the September

and October, 1891, settlements, as to even the items of cartage; and since October, 1891, no claim has been made for freight, exchange, telegrams, or cartage, except such as has been allowed, and no claim for a deduction on account of stale beer. Beer has been returned, and the amount thereof credited; but every other complaint has been responded to by the statement that defendant alone was responsible for that condition, and afterwards the accounts have been settled, except as stated. These settlements conclude the defendant as to the matters involved in them. He cannot now be allowed to say that the article for which he paid in full was not merchantable, nor that he was entitled to a credit, upon accounts rendered and balanced by payment, of other items directly involved in such settlements. Upon the presentation and payment of these accounts as stated, without reservation, defendant must be deemed to have admitted their correctness. The parties with whom he dealt were entitled to notice then and there of any claimed deduction from the accounts, to an opportunity then to investigate the matter, and to refuse to continue dealings with a party claiming deductions of between 25 and 30 per cent. upon the bill presented. Defendant was, perhaps, entitled to go to the jury upon the question as to the claim for cartage existing June 10, 1891; but as to any other claim which he now alleges existed at that time he is concluded by that settlement. Nor can he now be permitted to insist upon allowances for items connected with subsequent shipments which he has settled for.

As to the item of cartage alleged to have been referred to, no statement had been presented of that offset or claim, and none was submitted at that time. That settlement was made some three years after the corporation of the Falk, Jung & Borchert Brewing Company had been formed. It does not appear what the state of the account was at the date of the incorporation, or that there was anything said that could advise the corporation that a

claim was being made for cartage covering the period of the dealings with Jung & Borchert. As to these claims, they could, perhaps, be made available to offset any balance claimed to be due to Jung & Borchert at the date of the assignment, but to that extent only could they be made a charge against a party holding the account by naked assignment. The same is true as respecting any counter charges against the account of the Falk, Jung & Borchert Brewing Company. They could only be available, as against plaintiff, to apply upon or to wipe out, if sufficient for that purpose, the balance of the account which was assigned to plaintiff, and a judgment against plaintiff for charges against Jung & Borchert and the Falk, Jung & Borchert Brewing Company was wholly unwarranted.

Plaintiff was entitled to the instruction asked for that, if monthly statements are rendered to a debtor, and the statement so rendered is not objected to within a reasonable time, the acquiescence of the debtor is to be taken as an admission that the account is correctly stated. If the defendant settled the account presented June 10, 1891, and did not reserve the right to offset the claim for cartage against the subsequent bill, he is concluded by the settlement. The plaintiff denied that at the time of that settlement there was any reservation or exception made. The subsequent settlements, and the receipt of the monthly statements without objection, were in the nature of admissions by the defendant of the correctness of the accounts so settled and rendered.

Counsel for defendant, in his argument to the jury, indulged in some unwarranted comments as to the relative financial standing of the parties to this controversy. Plaintiff's counsel had referred to the character of the defense, and not to the standing of the defendant. This did not warrant the arraignment of plaintiff as a moneyed corporation, an oppressor intent upon crushing the defendant.

The court was in error in admitting in evidence the slips alleged to have been made of each item of shortage by the employés of defendant. Defendant said that he could not swear that they were correct, and the makers were not called.

The judgment is reversed, and a new trial granted.

The other Justices concurred.