STERLING *v.* CITY OF DETROIT.[1]

1. Evidence—Conclusions—Condition of Health.
    The testimony of a physician that plaintiff was a physical and mental wreck, that his health was such that there was no enjoyment of life and could be none, and that there was evidence of constant pain and plenty of it, being general conclusions, is incompetent.

2. Same—Error—Reasons for Striking out Testimony.
    A party cannot complain of a correct ruling of the court in striking out testimony, because the opposite party did not state the reasons for asking the ruling.

[1] Rehearing denied January 5, 1904.

3. SAME—PHOTOGRAPHS.

In an action against a city for injuries on a defective highway, photographs of the place of the accident are admissible, when there is sufficient evidence of their accuracy.

4. SAME—POLICE REPORTS—PERSONAL KNOWLEDGE.

The report of a patrolman, showing the time of an accident, is inadmissible, where it appears that he had no personal knowledge.

5. PERSONAL INJURIES—REQUESTS TO CHARGE—ORDINANCES.

In an action against a city for injuries received from driving into an excavation, it is not error to refuse a request by plaintiff to charge that, as a matter of law, an ordinance of the city obligated the city to guard the excavation by barriers and to mark it by lights. ·

6. SAME—DAMAGES—INSTRUCTIONS—HARMLESS ERROR.

Where the jury in an action for personal injuries, under the charge of the court, must have found that defendant was not guilty of negligence or that plaintiff was guilty of contributory negligence, an error in the charge relating to the measure of damages is not prejudicial.

7. TRIAL—IMPROPER ARGUMENTS OF COUNSEL.

Where counsel goes outside the record and makes unwarrantable statements favorable to the character of a witness, he cannot complain if opposing counsel, in answer thereto, makes unfavorable statements not warranted by the record.

Error to Wayne; Frazer, J. Submitted February 17, 1903. (Docket No. 79.) Decided July 8, 1903.

Case by Jennie Sterling, administratrix of the estate of Henry C. Sterling, deceased, against the city of Detroit, for personal injuries to her intestate, caused by a defective street. From a judgment for defendant, plaintiff brings error. Affirmed.

*B. T. Prentis*, for appellant.

*John W. McGrath* (*Timothy E. Tarsney*, of counsel), for appellee.

CARPENTER, J. Shortly before 8 p. m., between daylight and dark, June 30, 1898, plaintiff's intestate, Henry

C. Sterling, drove from an alley, between Twenty-Second and Twenty-Third streets, onto Howard street, in the city of Detroit. At that time the city was repaving Howard street, and for that purpose had removed the former pavement. Neither barricades nor lights were placed to guard or mark the excavation at the outlet of the alley in which plaintiff's intestate was driving. As he drove onto Howard street, the wagon dropped down about two feet into the new excavation, and he was thrown therefrom and injured.

Plaintiff's intestate brought this suit to recover damages. It was his claim that the defendant was negligent in having neither barricades nor lights to guard or mark the excavation, and that he himself was free from contributory negligence, and that, as a result of his injuries, he lost his mind. Defendant claimed that it was not negligent, that plaintiff's intestate was guilty of contributory negligence, and that his mind was affected before his injury. The issue was submitted to a jury, who found a verdict for the defendant. Since the trial in the court below, plaintiff's intestate died, and plaintiff, as his personal representative, brings the case to this court. We are asked to reverse the judgment because the court erred in admitting and excluding evidence, and in charging the jury, and because of improper remarks of counsel.

We cannot agree with plaintiff's counsel that the court erred in striking out the answers of his physician witness. This is a sample of the answers stricken out:

"He is a physical wreck, as well as a mental wreck."
"He is in that condition of health in which there is absolutely no enjoyment of life to him, and can be none."
"There is evidence of constant pain,—plenty of it."

In striking out these answers because they were simply general conclusions, and informing counsel that he could and should prove the facts, we think the court acted properly. *Runnells* v. *Village of Pentwater*, 109 Mich. 512 (67 N. W. 558), relied upon by plaintiff's counsel, has no application. There the trial court denied a motion to strike

out testimony.   No reason was given for the motion, and for that reason this court refused to determine the correctness of his ruling.   That case would have been applicable if the trial court had denied the motion under consideration.   It is applicable in this case to complaints that the trial court did not strike out certain answers of defendant's witnesses on motion of plaintiff's counsel.   Defendant's counsel, by failing to state a reason for striking out this testimony, was in no position to assign error if the court had denied his motion.   That circumstance, however, has no tendency to prove that the court erred in granting the motion.   While the court was not, under the authority above cited, legally bound to grant this motion, it was, as we have already stated, proper, and therefore not error, to grant it.   In determining whether we will reverse a case because of an erroneous ruling, this court looks at the grievance of the party complaining, and not at that of the party who is not complaining.   Plaintiff cannot complain of a correct ruling, though defendant did not state the reasons for asking for such ruling.

Nor did the court err in admitting in evidence certain photographs of the place of the disaster.   There was sufficient evidence of their accuracy to justify their admission.

We agree with the trial judge that the report made by patrolman Knox, showing the time of the disaster, of which it appears from his testimony he had no personal knowledge, was inadmissible.

*Charge of the Court:*

The court refused to charge, as requested by plaintiff, that, as a matter of law, an ordinance of the city obligated the city to guard the excavation by barriers and to mark it by lights.   This request was properly denied, as the ordinance at most afforded only evidence of negligence. *Cook* v. *Johnston*, 58 Mich. 439 (25 N. W. 388, 55 Am. Rep. 703).

The court also refused to charge, as requested by plaintiff, that, if defendant was guilty of gross negligence,

plaintiff might recover, notwithstanding his contributory negligence. The testimony warranted no such charge.

In charging the jury, the court said:

"There is no great physical injury proved here to this man at all. There is no evidence produced here before you as to any serious results that are apparent to your observation, or to the observation of the physicians who have testified. It is claimed that his skull may or may not have been fractured; but there is no claim that there is any evidence now to determine that the skull was fractured, but that there were such results apparent from the conduct and behavior of the man that it might have been done, and that, if it was done, certain results would have followed. It is claimed by the defendant that this man was peculiar before; that he was really not a man of what is called perfectly sound mind before the accident; and I suppose the inference is claimed from that that this degeneracy that exists now naturally followed, and was not caused by the injury.

"You have this case to determine. Here is a man that was strong upon that day. There is at present no physical evidence that he ever suffered a severe injury. * * * You are at liberty to give this plaintiff damages for what you shall find to be the result and consequences of this injury. * * * But you are not at liberty to give damages for anything that you are not satisfied has been proved by a preponderance of evidence to be the result of this injury. So to you is confided the important and delicate duty of determining just exactly what was the result of this injury, and how much of this man's condition, as it appears to be now, was produced by this injury. I say this is an important and responsible duty for you. It is not confided to the court. I have no opinion about it, and have no right to have any opinion about it; but it is my duty so to present this matter to you that, when you get into the jury room, you will clearly know and understand your duty in this regard."

It is earnestly contended by plaintiff's counsel that the court invaded the province of the jury when he said, "There is no great physical injury proved here to this man at all." I think it very clear from the whole charge that, in using this language, the judge referred to the external evidence of injury. I think the jury would so

understand the charge, and I think the trial judge was justified by the evidence in using it. In any event, we are bound to presume that plaintiff was not prejudiced by that portion of the charge which simply told the jury how to measure damages. Under the charge of the court, the jury were directed to render a verdict for the plaintiff if he had acted as a man of ordinary and common prudence, and the city was guilty of negligence. The jury, by their verdict, have found either that the plaintiff was guilty of negligence or that the defendant was not negligent. We are bound to presume, therefore, that they had no occasion to consider that part of the charge of the court which directed them how to measure plaintiff's damages. *Scheel* v. *City of Detroit*, 130 Mich. 51 (89 N. W. 554).

*Improper Remarks of Counsel:*

The plaintiff, administratrix, in this suit, was an important witness in the court below. It appeared from her testimony that she kept a lying-in hospital. She testified:

"Women who come to my place are in a delicate condition when they come, and they expect to be sick. I advertise that my place is pleasant and private, because the ladies that come want privacy. They come to hide themselves. I don't care whether the man sends them, or whether the women come to me, so long as a woman pays me for my services. Married women come there. I take women without being paid for it, if they are not able to pay."

In his argument to the jury, defendant's counsel said:

"Something has been said here that I think was sacrilegious. You know the kind of place this woman keeps. I have no objections to places of this kind under public authority, where there is no chance to commit the crime of abortion. I have no objections to places of that kind; they are proper; and when it is stated here by counsel that this woman was engaged in the same business that our Protestant and Catholic churches are engaged in, in the city of Detroit, I say, although not a church member, that it was vile and sacrilegious.    *    *    *    You have had experience in this world, and you know just as well as if a hundred witnesses had sat in that chair what the char-

acter of this place is.  You know that people go there—Some of you remember the history that has been written here in the city of Detroit in past years.  You have read of the poor girls who disappeared, and subsequently have been found dead, floating in the Detroit river.  Where did they come from?  Do you remember poor Martha Whitla, who came out of a place like this,  *  *  *  and never again was seen until she was seen floating in the Detroit river?  What becomes of the hundreds of new souls that come into the world in that place?  Where do they go to?  Ask the Detroit river."

The evidence in the case did not warrant defendant's counsel in saying what he did about the place kept by plaintiff; but, in determining whether this improper language constitutes reversible error, we are bound to consider the circumstances under which it was used. Plaintiff's counsel does not claim that he himself did not use the language attributed to him by defendant's counsel. We are bound to infer, therefore, that plaintiff's counsel had told the jury that the present plaintiff "was engaged in the same business that our Protestant and Catholic churches are engaged in, in the city of Detroit." *Sweet* v. *Railroad Co.*, 87 Mich., at p. 572 (49 N. W. 882). There was no evidence which justified this statement.  It would certainly shock the ordinary fair-minded person as much to be told that one who kept a private lying-in hospital, where privacy was insured, was engaged in the same business that our Protestant and Catholic churches are, as to be told that the women who went there, and the children who were born there, met their death by drowning in the Detroit river.  When plaintiff's counsel went outside the record, and made this statement in favor of the character of his witness, it would have better accorded with the proprieties of the court-room had defendant's counsel brought the matter to the attention of the learned judge presiding at the trial, who, it is to be presumed, would at once have rebuked the offending counsel, or taken some other step which would have prevented any damage resulting from the improper remark.  But plain-

tiff cannot complain because this course was not taken. If her counsel has the right to go outside the record, and make unwarranted statements favorable to her character, opposing counsel has the right to follow him, and make statements unfavorable to her character.    Plaintiff has no right to complain that an assault committed with weapons of this character is repelled by the use of similar weapons. See *Sweet* v. *Railroad Co.*, 87 Mich. 559 (49 N. W. 882). It is difficult to understand why the learned judge presiding at the trial did not interfere at the very beginning, and prevent either counsel from using objectionable language.    It must be presumed that some other duty prevented his giving the argument his usual careful attention.

We discover no error in the record, and the judgment of the court below must be affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.    MOORE, J., took no part in the decision.