CARBONELL v BLUHM

Docket No. 52494. Submitted December 7, 1981, at Detroit.—Decided
March 17, 1982. Leave to appeal applied for.

Thomas Carbonell, a physician specializing in obstetrics and
gynecology, subsequent to having heart surgery and suffering a
stroke lost consciousness at his home. He was taken to Henry
Ford Hospital where he had previously been a patient. Com-
plaining of pain in his left shoulder, Dr. Carbonell was exam-
ined by R. Garcia, M.D., a physician who had previously
treated Dr. Carbonell. After X-rays were taken of Dr. Carbo-
nell's shoulder, Dr. Garcia's diagnosis was that Dr. Carbonell
probably had bruised or sprained his shoulder. Subsequently,
Dr. Garcia referred Dr. Carbonell to G. Bluhm, M.D., a special-
ist in rheumatology. Dr. Carbonell discontinued his work as a
surgical assistant. Subsequently, Dr. Carbonell was again ad-
mitted to Henry Ford Hospital. Further X-rays were taken. Dr.
Bluhm eventually diagnosed Dr. Carbonell's condition as a
hidden posterior dislocation of the shoulder. Thereafter, a
closed reduction procedure was conducted. Dr. Carbonell al-
leged that he has experienced permanent pain and restriction
of movement in the shoulder. Dr. Carbonell filed suit against
Dr. Bluhm, Dr. Garcia, and Henry Ford Hospital for negligence
in Wayne Circuit Court. The court, Harry J. Dingeman, Jr., J.,
entered judgment for the defendants on a jury verdict of no
cause of action for the defendants. The plaintiff appealed,
alleging that: (1) the court erred in failing to grant a mistrial
on the basis of alleged improper statements in defense counsel's
closing argument; (2) the court erred when it struck portions of
his expert's testimony when the expert used the personal
pronoun "I" in describing the appropriate standard of care; (3)

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 75 Am Jur 2d, Trial § 233.
[2] 5 Am Jur 2d, Appeal and Error § 773.
[3] 61 Am Jur 2d, Physicians and Surgeons § 205 et seq.
[4] 22 Am Jur 2d, Death § 269.
[5] 29 Am Jur 2d, Evidence §§ 496, 497.
[6, 7] 75 Am Jur 2d, Trial § 193.

the court erred in failing to give the requested standard jury instruction on the statutory mortality table; and (4) the court erred in excluding as hearsay the clinical impressions of an emergency room physician who worked at the hospital and treated the plaintiff when he was admitted. *Held:*

1. The court did not abuse its discretion in failing to grant a mistrial. Allowance of statements made by counsel in closing argument is not error requiring reversal if the statements are in response to arguments made by opposing counsel. Here, the comments of defense counsel referred to one of plaintiff's expert witnesses who was unable to come to Michigan for trial and had to be deposed in Massachusetts. Since, initially, counsel for plaintiff in his closing argument made allegations regarding the defendants' part in nonproduction of certain X-rays for the expert witness to view, the door was opened for defense counsel to comment on the subject. Further, the trial court did not abuse its discretion in denying the plaintiff's motion for a mistrial based on defense counsel's describing during closing argument his attempts at gaining access to the plaintiff's income tax return.

2. The expert's use of the pronoun "I" was improper. Because the stricken responses involved the expert's own personal practices, the trial court did not err in striking those responses before the video-taped deposition was played to the jury.

3. The court's determination that the requested standard jury instruction should not be given does not constitute error requiring reversal. The instruction is not applicable for a person not in an average, normal, healthy condition. Here, there was ample evidence to support the position that the plaintiff was not a normal, healthy, 50-year-old male at the time of trial. He underwent heart surgery and had suffered a stroke.

4. The trial court did not err in excluding from evidence the clinical impressions of the emergency room physician. The statement at issue is a diagnosis and not a mere statement of physical condition. Since the impression is contained in a writing, although it may be an admission, and thus not hearsay at all, it must qualify on its own for admission into evidence. The hearsay exception in the rules of evidence for statements made for purposes of medical treatment or medical diagnosis in connection with treatment is not applicable because it does not apply to statements made by a doctor regarding a patient's physical condition but only to statements made by a patient of his physical condition, symptoms or medical history. The exception for business records does not apply either, since medical

diagnosis is excluded under the hearsay exception for business records in the Michigan Rules of Evidence.

Affirmed.

R. M. Maher, J., dissented. He would reverse and remand for a new trial. He believes that the comments made by the defense counsel were not made in response to plaintiff's counsel's closing argument. Further, he believes that the potential impact on the jury of defense counsel's attack on the integrity of the plaintiff's counsel should constitute error requiring reversal. Here, the improper remarks of defense counsel were not preceded by similar improper remarks by plaintiff's counsel.

### Opinion of the Court

1. Trial — Argument of Counsel — Appeal.

Allowance of statements made by counsel in his closing argument is not error if the statements are made in response to arguments made by opposing counsel.

2. Appeal — Motions — Mistrial.

Denial of a motion for a mistrial will not be reversed on appeal unless it is demonstrated that such a denial constituted an abuse of the trial court's discretion.

3. Physicians and Surgeons — Medical Malpractice.

A treating physician is liable for damages when it is shown that he departed from the standard of care which is known as customary medical practice; the measuring standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act.

4. Jury — Jury Instructions — Mortality Tables.

A standard jury instruction should be used whenever it is applicable, accurate and requested by a party; the standard jury instruction regarding the statutory mortality table is not applicable for a person not in an average normal, healthy condition (GCR 1963, 516.6[2]; SJI 34.01).

5. Evidence — Hearsay — Medical Treatment — Rules of Evidence.

The rule of evidence regarding an exception to the hearsay rule for statements made for purposes of medical treatment or medical diagnosis in connection with treatment refers to statements by the patient; the rule does not apply to statements by the doctor regarding the patient's physical condition (MRE 803[4]).

DISSENT BY R. M. MAHER, J.

6. TRIAL — ARGUMENT OF COUNSEL.

*It cannot be demonstrated what effect any particular statement of counsel has on a jury; no litigant should be expected to demonstrate affirmatively a prejudicial effect on the jury resulting from improper remarks of the opposing counsel.*

7. TRIAL — ARGUMENT OF COUNSEL.

*Improper remarks by a plaintiff's counsel do not necessarily result in a reversible error where they are in direct response to improper statements of defense counsel.*

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen,* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.,* for defendants.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

D. C. RILEY, P.J. Plaintiff appeals from a judgment of no cause of action entered against him in circuit court. The claim brought by plaintiff alleges professional negligence against the individual defendants for their failure to diagnose plaintiff's dislocated shoulder when he sought treatment at defendant hospital's emergency room.

In 1972, plaintiff, a physician specializing in obstetrics and gynecology, experienced physical difficulties and discovered the existence of cardiac problems. Surgery to replace a heart valve was successfully conducted in early 1973, after which plaintiff resumed his practice. In July of 1973, plaintiff suffered a stroke but after treatment regained muscle usage and nearly complete sensation in his left arm. After the stroke, plaintiff no longer practiced medicine but acted as a surgical assistant to fellow doctors.

On February 2, 1974, plaintiff lost consciousness

while at home and fell to the floor. He was taken to defendant hospital's emergency room and then transferred to the cardiology floor. Plaintiff complained of pain in his left shoulder and X-rays were taken which showed no positive injury. Therefore, defendant Garcia's tentative diagnosis was that plaintiff had probably bruised or sprained his shoulder. The shoulder pain continued after plaintiff's discharge from the hospital and he was unable to achieve a full range of movement of the left arm. The pain and problems persisted, thus, plaintiff pursued further medical treatment from defendant Garcia who referred plaintiff to defendant Bluhm, a specialist in rheumatology. Plaintiff was forced to discontinue his work as a surgical assistant.

On April 27, 1974, plaintiff was admitted to defendant hospital for further treatment. Dr. Bluhm changed the anti-inflammatory medication and ordered X-rays. The new medication had reduced the swelling in the shoulder and, on the basis of the X-rays, Dr. Bluhm suspected a hidden posterior dislocation of the shoulder. This diagnosis was confirmed and a closed reduction procedure was conducted. The plaintiff was discharged the following day. He testified that he experienced permanent pain and restriction of movement in the shoulder.

## I

Plaintiff contends that the court committed error in failing to grant him a mistrial on the basis of defense counsel's closing argument. The comments objected to were that allegedly plaintiff's counsel had withheld evidence from his expert and that "obviously something is going on" between plaintiff's counsel's firm and plaintiff's expert.

One of plaintiff's experts was unable to come to Michigan for the trial and, therefore, had to be deposed in Massachusetts. Defendant objected to the deposition and filed an application for emergency leave to appeal. This Court reached its decision against defendant late Friday, December 14, 1979. The plaintiff then sought a trial court order allowing the X-rays on exhibit to be taken to Massachusetts for the deposition. However, because of the lateness of the hour, no circuit judge was available to sign the order and defendants' counsel refused to stipulate to taking the X-rays to the deposition. Plaintiff thus argues that, because defense counsel would not stipulate to the taking of the X-rays already introduced into evidence to Massachusetts to allow the expert to review them, defense counsel's argument that plaintiff was withholding evidence from his own expert was incorrect and prejudicial.

This argument is difficult only in its facts and not the law. The appellate briefs must be compared with the more than 300-page trial transcript to resolve the confusion. Defense counsel's closing argument that plaintiff did not provide the X-rays to his expert refers not only to the deposition of December 15, 1979, but to plaintiff's failure to provide the X-rays to his expert during the entire course of the expert's preparation for the case. Furthermore, the record shows that, in his initial closing argument, plaintiff's counsel made allegations as to defendants' part in the nonproduction of the X-rays. These allegations against defendants introduced the subject of nonproduction of the X-rays and "opened the door" to comment on the subject by defense counsel in his closing argument. Allowance of statements made by counsel in closing argument will not be an error if the state-

ments are made in response to arguments made by opposing counsel. *Haynes v Monroe Plumbing & Heating Co,* 48 Mich App 707, 721; 211 NW2d 88 (1973).

The plaintiff also objects to defense counsel's comments concerning plaintiff's experts and his counsel's firm. The trial court denied plaintiff's motion for a mistrial based on these alleged errors. The denial of a motion for a mistrial will not be reversed unless it is shown that the denial constituted an abuse of discretion. *Flinn v Sun Oil Co,* 96 Mich App 59, 62; 292 NW2d 484 (1980), *People v Coffman,* 45 Mich App 480, 487; 206 NW2d 795 (1973).

The Supreme Court defined "abuse of discretion" in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), in the following manner:

"[A]n abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

Having reviewed the record, we conclude that the trial court did not abuse its discretion.

## II

The plaintiff alleges that the trial court commit-

ted reversible error in denying his motion for a mistrial in response to defense counsel's reference to plaintiff's income tax returns during closing arguments.

Defense counsel had repeatedly tried to have plaintiff produce his income tax returns before trial, which plaintiff failed to do. At trial, the court denied defense counsel's request for an instruction concerning the tax forms. Defendants were informed by the trial court that the failure to produce the tax records could be used when plaintiff made a claim of lost wages. The judge said: "You may argue to the jury the lack of proofs, as you see it, of earning capacity, but the request to instruct is refused."

During closing argument, defense counsel began describing his attempts at obtaining plaintiff's income tax returns. This was immediately objected to on the ground that this was not in evidence. Defense counsel continued mentioning his motion to produce the records to which plaintiff's counsel also objected. Both objections were sustained. Defense counsel then stated that he had tried to get the records and that plaintiff's counsel had not shown the income tax records to the jury. Again, plaintiff's counsel objected. At this point, the trial judge excused the jury and explained that defense counsel could properly comment on the lack of plaintiff's proof with respect to income loss but that he could not go through the details of the pretrial procedures undertaken to have the records produced. Defense counsel then stated that he would limit himself to comment consistent with the instruction. Plaintiff's counsel moved for a mistrial because he thought the remarks already made were "very prejudicial".

The standard of review applied to a trial court's denial of a motion for a mistrial has been discussed earlier in this opinion. We must determine whether the court abused its discretion. It was not the fact that defense counsel raised the subject of tax returns, which had been held proper by the court, but the manner in which he introduced the subject that is objected to. The references to which plaintiff objects all occurred during the same short span of closing arguments. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion.

## III

The plaintiff further contends that the court erred when it struck portions of his expert's testimony when the expert used the personal pronoun "I" in describing the applicable standard of care. The plaintiff's Massachusetts expert, during his video-taped deposition, answered questions by responding with what he would have done rather than with what the standard of practice was.

A treating physician is liable for damages when it is shown that he departed from the standard of care which is known as customary medical practice. *Wood v Posthuma,* 108 Mich App 226, 230; 310 NW2d 341 (1981). The measuring standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act. *Rytkonen v Lojacono,* 269 Mich 270; 257 NW 703 (1934). The expert's use of the pronoun "I" was improper. *Id.* Because the stricken responses involved the expert's own personal practices, the trial court did not err in

striking those responses before the video-taped deposition was played to the jury.

## IV

Plaintiff argues that the court erred in failing to give Standard Jury Instruction (SJI) 34.01 as requested. That instruction involves the statutory mortality table and the court initially agreed to give the instruction. After closing argument, the court refused to give the instruction because the table is for ordinarily healthy persons which the court believed was inappropriate as to the plaintiff.

The Court in *Javis v Ypsilanti Board of Education,* 393 Mich 689, 697; 227 NW2d 543 (1975), held that GCR 1963, 516.6(2) requires that the standard jury instructions be used whenever they are applicable, accurate and requested by a party. Standard Jury Instruction 34.01 is not applicable for a person not in an average, normal, healthy condition. *Fortner v Koch,* 272 Mich 273, 279; 261 NW 762 (1935).

In this case, there was ample evidence to support the position that plaintiff was not a normal, healthy, 50-year-old male at the time of trial. He underwent heart surgery in 1973, and suffered a stroke later that year and suffered from seizures and recurring cardiac problems. He stated that he did not expect to live much longer than ten years. Plaintiff's counsel repeated this expectation in closing argument and noted that plaintiff might live longer because "he is a man that does not quit". The court's determination that the instruction should not be given is not reversible error.

V

Plaintiff's final allegation is that the court erred in excluding as hearsay the clinical impressions of an emergency room physician who worked at the defendant hospital and treated plaintiff when he was admitted. The statement at issue appeared under a box on the medical chart labeled "Clinical Impressions". The emergency doctor wrote "Impression: Frozen shoulder, secondary to old trauma".

Both parties agree that the statement is actually an admission by an agent of defendant hospital. Therefore, the admission is not hearsay at all according to MRE 801(d)(2)(D). Plaintiff contends that because the statement is an admission, the impression should have been admitted. However, the impression is contained in a writing which must qualify on its own for admission. The Court stated in *Lovend v Beaumont Hospital,* 78 Mich App 686, 688; 261 NW2d 37 (1977): "Unquestionably, the admissibility of party admissions is well-established. However, the party admission was contained in a business record and, therefore, involves a second level of hearsay that must also come within the business records exception to be admissible."

The plaintiff argues in the alternative to the business record exception that the statement was "made for purposes of medical treatment or medical diagnosis in connection with treatment" and, thus, it qualifies as a hearsay exception under MRE 803(4).

This exception is not applicable here as it permits statements by the patient of his physical

condition, symptoms, or medical history. The rule
in MRE 803(4) does not apply to statements by the
doctor regarding the patient's physical condition.
*Gallaway v Chrysler Corp,* 105 Mich App 1, 9; 306
NW2d 368 (1981).[1]

The admission contained in the report can only
then be admitted if MRE 803(6) is applicable. That
rule provides that the records of a regularly con-
ducted activity are an exception to the hearsay
rule. This rule is commonly known as the business
records exception. The rule states:

"(6) *Records of regularly conducted activity.* A memo-
randum, report, record, or data compilation, in any
form, *of acts, transactions, occurrences, or events,* made
at or near the time by, or from information transmitted
by, a person with knowledge, if kept in the course of a
regularly conducted business activity, and if it was the
regular practice of that business activity to make the
memorandum, report, record, or data compilation, all as
shown by the testimony of the custodian or other
qualified witness, unless the source of information or
the method or circumstances of preparation indicate
lack of trustworthiness. The term 'business' as used in
this paragraph includes business, institution, associa-
tion, profession, occupation, and calling of every kind,
whether or not conducted for profit." (Emphasis added.)

The rule in MRE 803(6) has been subject to
minimal appellate review since 1978, when the
Michigan evidence rules were adopted. The precur-
sor to the present rule was MCL 600.2146 (Stat
Ann 1962 Rev § 27A.2146): "Under this statute it
has been held that hospital records are admissible
as business entries to the extent they record

---

[1] Unfortunately, certain language in *Echols v Rule,* 105 Mich App
405, 411; 306 NW2d 530 (1981), regarding MRE 803(4), which was
approved by the writer, would suggest otherwise; to the extent that it
does, I now disavow the same.

events and acts, such as admissions, discharges, and ministrations in the hospital, although they are not ordinarily admissible as a means of introducing medical history or diagnosis." *Bond v Greenwood,* 34 Mich App 41, 43; 190 NW2d 731 (1971). The Court went on to say that a general description of a physical condition, as distinguished from a diagnosis, was admissible under the business records statute. *Id.* Plaintiff makes an attempt to classify the clinical impression in this case as a mere statement of a physical condition, rather than a diagnosis and, thus, bring this case under the holding in *Bond.* We have determined, as did the trial court, that the statement at issue is a diagnosis and not a mere statement of physical condition.

The language of MRE 803(6) varies from that of the Federal Rule 803(6) in a way that is determinative to this case. The Michigan rule applies to "acts, *transactions, occurrences,* or events"; the federal rule applies to "acts, events, *conditions, opinions, or diagnoses".* (Emphasis added.) The Michigan rule is narrower in scope than its federal counterpart. Michigan apparently has chosen to exclude medical diagnosis from the business record exception, MRE 803(6). Therefore, the trial court did not err in excluding the clinical impression offered by plaintiff.

Affirmed. Costs to appellees.

Cynar, J., concurred.

R. M. Maher, J. *(dissenting).* I respectfully dissent from the conclusion in Part I of the majority opinion that the following comments by defense counsel during closing argument were either made in response to plaintiff's counsel's closing argument or constituted harmless error:

"I can assure you that if there was a case here, and Mr. Dickinson [plaintiff's counsel] is a good lawyer, *he wouldn't have purposefully kept records and X-rays from his witness.* He would have put it all on the table, but he didn't.

"I can assure you, also, that in representing a physician *if he needed an expert's testimony* to prove his case *you wouldn't have to go several hundred miles* to Massachusetts *to find Dr. Brinkman.* There are 200 orthopedic physicians in the State of Michigan." (Emphasis supplied.)

In support of its conclusion that the above-quoted argument amounted to harmless error, the majority states that the inference was not merely to the deposition of December 15, 1979, "but to plaintiff's failure to provide the X-rays to his expert during the entire course of the expert's preparation for the case". I believe that the majority opinion misapprehends the gravity of the inference which the jury *could* have drawn. By using the word "purposefully", defense counsel impugned the integrity of plaintiff's counsel and, indeed, the trial itself. How often has this Court and the Supreme Court made it clear that certain remarks are "offensive to the maintenance of a sound judicial system"? Comments which call the integrity of that system into question must be examined with the utmost scrutiny.

In this case, the record is devoid of any suggestion that plaintiff's counsel "purposefully" withheld evidence from his witness,[1] and by extension from the jury. I believe that the *potential* impact

---

[1] During oral argument, it was conceded that plaintiff's expert witness had made plans with plaintiff's counsel to testify in person at the trial and to arrive before trial in time to examine the necessary medical records, including the copied X-rays. However, at the last minute, plaintiff's expert found himself unable to leave Boston. Plaintiff's counsel's decision to defer the expert's examination of the X-rays until his arrival in Detroit is of no moment; there was absolutely no

on the jury of this attack on the integrity of plaintiff's counsel compels the conclusion that these remarks constituted reversible error. As this Court stated in *People v LaForte,* 75 Mich App 582, 584; 256 NW2d 44 (1977):

"Whatever the metaphor, the damage was irreparable: the bell could not have been unrung; the ink stain could not have been eradicated; the stench could not have been ignored."

It is not enough to view this matter with judicial hindsight and impose a burden on plaintiff to, in effect, place himself in the minds of the jurors in order to demonstrate prejudice. *If* the jury viewed the remarks in the light ascribed to them by the majority opinion, then no prejudicial error occurred.[2] But I am not confident that not even one juror was improperly affected. I agree with the Supreme Court's holding in *Wayne County Board of Road Comm'rs v GLS LeasCo,* 394 Mich 126, 139; 229 NW2d 797 (1975):

" 'A substantial doubt regarding the fairness of the trial has been raised * * *. To say, as did the Court of Appeals, that LeasCo must 'demonstrate affirmatively prejudice" is to misstate the test if not misplace the burden.

"It cannot be demonstrated what effect *any particular statement has on a jury.* Neither LeasCo nor any other

---

*purpose* or *intent* to deprive the expert of the opportunity to view the records (including the copies of the X-rays).

[2] It should be noted that defense counsel could properly have commented on plaintiff's counsel's failure to ensure that unforeseen consequences would not prevent plaintiff's expert from viewing the copied X-rays. As always, there are permissible *and* impermissible ways to demonstrate a particular assertion. If defense counsel truly intended to comment on plaintiff's counsel's lack of preparation or organization other less prejudicial means were available. See *People v Ronald Green,* 74 Mich App 601, 606; 254 NW2d 788 (1977). Permissible goals do not validate impermissible means.

litigant similarly situated can properly be expected to 'demonstrate affirmatively' a prejudicial effect on the jury resulting from improper remarks of opposing counsel." (Emphasis supplied.)

I also disagree with the majority's conclusion that the remarks in question did not constitute error requiring reversal inasmuch as they were made "in response to arguments made by opposing counsel". The sweep of the majority's brush (and that of this Court in *Haynes v Monroe Plumbing & Heating Co,* 48 Mich App 707; 211 NW2d 88 [1973]) is too broad. The point is neatly summarized in this Court's opinion in *People v Newby,* 82 Mich App 489, 493-494; 266 NW2d 492 (1978): "*Improper remarks* by a prosecutor *do not amount to reversible error* where they are *in* such *direct response to improper statements* of defense counsel." (Emphasis supplied.) See generally *Kalamazoo v Standard Paper Co,* 182 Mich 476; 148 NW 743 (1914), *Sterling v Detroit,* 134 Mich 22; 95 NW 986 (1903), *Little v Williams,* 107 Mich 652; 65 NW 568 (1895), *Pabst Brewing Co v Lueders,* 107 Mich 41; 64 NW 872 (1895).

In this case, the improper remarks of defense counsel were *not* preceded by similar improper remarks by plaintiff's counsel. The remarks referred to in the majority opinion as "'opening the door' to comment on the subject by defense counsel in his closing argument"[3] were proper comments on the evidence.

My review of the record indicates that, at least until commencement of the trial, the parties were forced to rely on copies of the X-rays of plaintiff's shoulder. In his closing argument, plaintiff's coun-

---

[3] The majority opinion is correct insofar as it suggests that the door is open to *permissible* comment on the subject. My area of disagreement with the majority is over the propriety of those comments.

sel contended that the missing originals indicated improper record-keeping by defendant Henry Ford Hospital:

"And where are the X-rays? Where are the original X-rays of the shoulder?

"Dr. Guise sat there on the stand and was trying to mark off that wax pen marker and said they're copies. Well that wasn't of particular significance at that time until Dr. Bakirci took the stand and said with copies you lose some of the detail.

"Is this the way to run a teaching hospital? Is this the way to teach young doctors when patients come in with conditions like this? I hope not."

After an objection by defense counsel, plaintiff's counsel concluded, "Where are the X-rays? Lost? I don't know. It is for you to determine". I find nothing in those remarks which suggests that defense counsel withheld the original X-rays from evidence or committed any other impropriety. Nothing in those remarks justifies defense counsel's personal and untruthful attack on the integrity of plaintiff's counsel: namely, defense counsel's allegation that plaintiff's counsel "purposefully" withheld the original X-rays or copies thereof from his expert witness. In fact, SJI2d 6.01 is designed precisely to handle such a situation. There is simply nothing in the closing argument of plaintiff's counsel to warrant the improper remarks made by defense counsel. *Pabst Brewing Co v Lueders, supra.*

I would reverse and remand for a new, and fair, trial.[4] *People v LaForte, supra.*

---

[4] On retrial, I would caution defense counsel to avoid the unnecessary reference to plaintiff's need to travel out-of-state in order to obtain witnesses. *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339, 352-354; 273 NW2d 75 (1978). But see *Wilson v Stilwell,* 411 Mich 587; 309 NW2d 898 (1981).