PEOPLE v WILBOURNE

1. Larceny—Asportation—Felonious Intent—Evidence.

The carrying away of another's personal property with felonious intent was established where defendant, charged with larceny in a building, had only $5 in his possession when arrested, did not have a credit charge card with the complaining store, had admitted that he had taken a stereo tape deck in the store, valued at $44.50, and had walked past the last possible cashier and down an aisle toward the exit before he was apprehended (MCLA 750.360).

2. Criminal Law—Defendant Testifying—Prior Conviction—Introduction by Defendant.

A defendant cannot complain on appeal that the trial court abused its discretion in admitting his prior felony conviction record where defendant's counsel introduced the record by asking defendant about it, thereby softening its impact on the jury.

3. Criminal Law—Instructions to Jury—Preserving Question.

Error may not be predicated on jury instructions where no objection to them was made at trial, unless there is a manifest miscarriage of justice (GCR 1963, 516.2).

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 November 10, 1972, at Lansing. (Docket No. 13056.) Decided January 17, 1973.

Woodrow W. Wilbourne was convicted of larceny in a building. Defendant appeals. Affirmed.

References for Points in Headnotes

[1] 50 Am Jur 2d, Larceny § 50.

Validity, construction, and effect of statutes establishing shoplifting as specific criminal offense. 90 ALR2d 811.

[2] 29 Am Jur 2d, Evidence §§ 321, 327, 333.

39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 18.

[3] 53 Am Jur, Trial §§ 824, 827.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Martin F. Palus,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and BRONSON and TARGONSKI,* JJ.

McGREGOR, P. J. Defendant was convicted by a jury of larceny in a building, MCLA 750.360; MSA 28.592.

A witness, Bertha Fails, saw the defendant enter the Montgomery Ward store in downtown Flint with a folded shopping bag under his arm; she promptly notified an off-duty Flint policeman and part-time safety inspector at the store of the defendant's presence in the store. The witness and the policeman saw the defendant browsing in the radio and television area of the store. The officer, in an observation position some 45 feet behind the defendant, saw the defendant stop in front of a portable stereo console set. Defendant was thus observed as he unfastened the wires leading to a stereo tape deck, slid the tape deck into his shopping bag, and headed toward the exit. The officer followed the defendant as he walked past the cashier's stand and headed for the exit. At this point, a tall black male came up to the defendant, whispered in his ear, and motioned with his head in the direction of the policeman. Defendant then turned around, proceeded into the store area, removed the stereo tape deck from his shopping bag

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and placed it on a table of polo shirts. The officer apprehended the defendant, identified himself, and told the defendant he was under arrest. The officer testified that the defendant hit him and then ran toward the exit door, where the officer caught him.

The defendant testified that he did not move the stereo tape deck from the shelf, denied hitting the officer, and claims to have run away from the officer in fright, because he was on parole from a previous conviction of larceny from an automobile.

The elements which constitute the crime of larceny are: (1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or the personal property of another, (5) the taking must be without the consent and against the will of the owner. See *People v Anderson,* 7 Mich App 513, 516 (1967). To these elements, the crime charged requires a 6th element: (6) the taking must be done within the confines of the building.

Defendant admits that elements (1), (2) and (4) were clearly established by the evidence. It is also clear that element (6) was also established.

The officer testified that the value of the stereo tape deck was approximately $44.85. Defendant testified that he had only $5 in his possession at the time of his arrest and that he did not have a Montgomery Ward charge card. Therefore, it would have been impossible for the defendant to have purchased the stereo tape deck, as the defendant attempted to postulate. In addition, defendant denied ever having touched the stereo tape deck and then, subsequently, contradicted himself when he claimed to have carried it in search of a cashier. However, there was testimony

that defendant walked past the last possible cashier and down the aisle toward the exit. The contradictory testimony of the defendant negates any "innocent theory" in his behalf. When considered in the light of testimony of other witnesses, it is apparent that the jury found themselves unable to believe defendant.

The sum total of the evidence presented sustained each and every element of the crime charged and was sufficient to overcome any "innocent theory" advanced by the defendant. The case against the defendant was not based on circumstantial evidence, as claimed by defendant. See *People v Spann,* 3 Mich App 444, 454 (1966); *People v Davenport,* 39 Mich App 252 (1972).

Defendant secondly contends that the trial court erred in admitting evidence pertaining to his prior conviction. During the trial and prior to defendant's testimony, the court addressed the defendant as follows:

*"The Court:* The fact that a witness has been convicted of a crime, if such be a fact, may be considered only for the purpose of determining his believability. A prior conviction does not necessarily destroy or impair a witness's credibility, but it is something you may consider in that regard.

* * *

*"The Court:* This is the law, and this is the instruction that I would give, and I'm telling you so you can make your choice.

*"The Defendant:* I understand.

* * *

*"Mr. Brasseur (defense counsel):* I have no witnesses to call on behalf of the defendant, your Honor.

"It has been my recommendation to the defendant that he not testify, but, as the Court knows, that's his decision to make, and I'll ask the Court to inquire of him directly.

"*The Court:* Do you want to take the stand, Mr. Wilbourne?

"*The Defendant:* Well, I mean, I see no other alternative. I mean I have everything going against me."

Whereupon, the defendant took the witness stand and his attorney proceeded:

*By Mr. Brasseur:*

"*Q.* Would you state your full name, please?

"*A.* Woodrow Wilson Wilbourne, Jr.

"*Q.* Where do you live, Mr. Wilbourne?

"*A.* 1248 Hickory.

"*Q.* Who do you live there with?

"*A.* My mother.

"*Q.* How old are you now, Mr. Wilbourne?

"*A.* Twenty-two.

"*Q.* Have you ever up to this point in your life, Mr. Wilbourne, ever been convicted of a serious crime, a felony crime?

"*A.* Yes.

"*Q.* Do you remember when that was?

"*A.* Yes.

"*Q.* When was that, Mr. Wilbourne?

"*A.* Last March.

"*Q.* Do you remember what it was?

"*A.* Larceny from an auto, attempted larceny.

"*Q.* From an automobile?

"*A.* Yes.

"*Q.* And whatever happened in that case?

"*A.* I pleaded guilty.

"*Q.* You pled guilty?

"*A.* Yes.

"*Q.* Why did you plead guilty to that?

"*A.* Because I was guilty.

"*Q.* Were you sent to prison for that?

"*A.* Yes."

Defendant specifically contends that *People v Farrar,* 36 Mich App 294, 300–306 (1971) requires

a trial court to exercise its discretion as to whether evidence of a defendant's prior conviction should be admitted in evidence. Defendant's contention here is that the trial court foreclosed such exercise of discretion when it informed the defendant of the possible courses of action it might take. The holding in *Farrar* was based upon a similar construction in *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965). In *United States v. McCord,* 137 US App DC 5, 7–8; 420 F2d 255, 257–258 (1969), the same Court, which four years earlier announced the *Luck* decision, construed that decision as follows:

"We are not prepared, however, to say that the trial judge abused his discretion in the present case. Appellant's trial counsel apparently agreed, for he made no objection to the ruling. Moreover, the *Luck* ruling did not discourage the appellant from testifying. Indeed, defense counsel, not the Assistant United States Attorney, introduced the 1954 conviction, thereby softening its impact on the jury. Therefore, we conclude that appellant's conviction is not undercut by reversible error."

It is apparent that defendant's counsel here used the same softening methods as noted in *McCord,* when he introduced defendant's prior conviction to the jury. In such an instance, there is no reversible error. *United States v McCord, supra.*

Defendant also contends that there was reversible error in the court's charge to the jury, but no objection to this instruction was made at trial, nor was a motion for a new trial made. When the entire jury instructions are considered and construed in context, no reversible error is indicated. It is a well established rule that error may not be predicated on appeal to instructions where no objection has been made in the trial court unless

there is a manifest miscarriage of justice. GCR 1963, 516.2; *People v Galinski,* 38 Mich App 214 (1972). No miscarriage of justice herein is manifest.

Affirmed.

All concurred.