PEOPLE v COFFMAN

1. CRIMINAL LAW—JURY—VOIR DIRE EXAMINATION.

A defendant, having failed to request additional voir dire questions when permitted to do so and having failed to object to any already put to the jury, may not be heard on appeal to claim that the voir dire examination did not provide him with an adequate basis for a challenge for cause.

2. CRIMINAL LAW—UNSOLICITED TESTIMONY—INSTRUCTIONS TO JURY.

A volunteered and unresponsive statement in a trial for statutory rape that, in the opinion of the witness, the complainant was telling the truth is particularly amenable to a swift and sure instruction to disregard and, if corrected by the court, does not constitute reversible error.

3. CRIMINAL LAW—CLOSING ARGUMENT—PREJUDICIAL MISSTATEMENTS —INSTRUCTIONS TO JURY.

Prejudicial remarks or incorrect statements by the prosecutor during closing argument are grounds for reversal only when an objection and curative instruction by the trial judge could not have rectified the situation.

4. CRIMINAL LAW—RAPE—TESTIMONY OF VICTIM—CORROBORATION.

In a trial for rape corroboration of the complaining witness's testimony is not required.

5. CRIMINAL LAW—EVIDENCE—DEFENDANT TESTIFYING—PRIOR CONVICTIONS.

A trial judge is not required *sua sponte* to exclude questions put to defendant concerning prior convictions even though the most recent was 19 years previous to trial; allowing or excluding

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 228, 229.
[2] 53 Am Jur, Trial § 775 *et seq.*
[3] 53 Am Jur, Trial § 506.
[4] 65 Am Jur 2d, Rape § 94 *et seq.*
[5, 6] 53 Am Jur, Trial §§ 783, 789.
[7] 21 Am Jur 2d, Criminal Law § 574

such questions is discretionary, and the judge must be asked to exercise his discretion (MCLA 600.2158).

6. Criminal Law—Evidence—Prior Crimes—Instructions to Jury.

In a trial for statutory rape in which the complaining witness testified upon questioning by defense counsel to prior acts of intercourse with the defendant, a special instruction to the jury as to the limited use of evidence of other crimes is not necessary when the trial judge reads to the jury from the information charging the defendant with committing the specified acts on a given specific date.

7. Criminal Law—Sentence—Amending Sentence—Presence of Defendant.

The amending of a sentence to change it from 5 years to life to 5 to 15 years to conform to a statutory provision that the sentence shall be "for life or for any term of years" was merely a clerical correction of an improper recital and did not require the defendant's presence.

Appeal from Oscoda, Allan C. Miller, J. Submitted Division 3 February 6, 1973, at Grand Rapids. (Docket No. 12260.) Decided March 26, 1973. Leave to appeal denied, 390 Mich 758.

Guvarie S. Coffman was convicted of statutory rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Norman J. Randall,* Prosecuting Attorney, and *Hugo L. Burzlaff,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender, by *Martin I. Reisig,* Assistant Defender, for the defendant.

Before: Danhof, P. J., and R. B. Burns and J. H. Gillis, JJ.

Danhof, P. J., Defendant was convicted by a jury of statutory rape, contrary to MCLA 750.520; MSA 28.788. He was first sentenced to five years to life in prison. This was subsequently altered to 5

to 15 years in prison. This case was remanded on February 7, 1972, to the trial court so defendant could file a delayed motion for new trial and have an evidentiary hearing. On remand, defendant's motion for new trial was denied.

The victim of the crime was alleged to be the defendant's daughter, who was 14 years of age at the time. At trial, the victim testified in detail concerning an act of sexual intercourse between her and the defendant on the afternoon of December 17, 1970, at approximately 4:30 pm or 5 pm. On cross-examination, she stated that she complied with the defendant out of fear that if she did not, he would hurt her or the other children; further, that she had had intercourse previously, but that the prior acts were always with the defendant.

Lucille Sietzke testified that the victim came to her house at approximately 5:45 pm in the afternoon in question; that she asked to use the telephone, and asked her the sheriff's number. She stated that the victim appeared nervous. She further testified that the victim left with a member of the sheriff's department, but later came back to spend the night.

Doctor George Frailey testified that he examined the victim on December 18, 1970, after she was brought in by the sheriff's department. Doctor Frailey stated that he talked with the victim for approximately 15 minutes prior to examining her and that in his opinion she was telling the truth. This statement was immediately objected to by the defendant and the court emphatically instructed the jury to disregard the remark.

Further testimony by Doctor Frailey can be summarized as follows: that based upon a pelvic examination it was his opinion that the victim had

had prior sexual relations; that no sperm test was performed because he did not have the necessary equipment in the office and did not think that it would be a profitable test.

The people rested their case and Clarissa Coffman, a cousin of the victim, was called as a witness for the defense. She stated that a couple of years prior to trial the victim had informed her that she had had sexual relations with a boy from school. On cross-examination by the prosecutor, the witness admitted that she took this statement "with a grain of salt".

The defendant then took the stand in his own defense and denied all the allegations. He further testified that on December 11, 1970, he had undergone an operation on five vertebrae in his lower back, and that he had left the hospital on December 16, 1970.

I

Defendant first contends that the trial court erred by asking a leading question of a prospective juror during voir dire. It is well-settled that "a large discretion is vested in the trial court as to the scope of examination of jurors on their voir dire". *People v Rose,* 268 Mich 529, 531 (1934). Furthermore, no objection was made by the defendant to the question and he argues now for the first time on appeal that the trial court's question prejudiced him in that it did not provide him with an adequate basis for a challenge for cause. Defendant cites the case of *People v Milkovich,* 31 Mich App 582 (1971). That case is clearly distinguishable from the case at bar. There the question on appeal was whether it was error for the court to refuse to ask a question pertaining to the state of mind of the veniremen during voir dire exami-

nation when specifically requested to do so by defense counsel. Instead of asking the question, the trial court instructed the jury on a particular point and then sat back and inquired if anyone was willing to violate that instruction. In the instant case, while the question was phrased in such a manner as to presuppose an answer that the juror was not prejudiced, he was certainly free to reply that he had already formed an opinion. Here the juror was not subject to judicial coercion of the type found to constitute error in *Milkovich.* Furthermore, the trial court's voir dire examination in the instant case did lead to another juror being discharged after she had indicated she had already formed an opinion as to the defendant's guilt. Finally, at the conclusion of voir dire, the trial court asked both the prosecution and the defense counsel if there were any further questions that they wanted put to the jury. Having failed to request additional questions or object to any already put to the jury, defendant cannot now be heard on appeal.

## II

Defendant claims that because of prior involvements with three jury members, those members were prejudiced against him at trial. No reason is given for not having these jurors dismissed at trial either for cause or by means of a peremptory challenge. Instead, defendant merely points this Court to *People v Degraffenreid,* 19 Mich App 702 (1969), claiming mistake of counsel. The instant case was remanded to the trial court for a determination of the validity of defendant's allegations concerning juror prejudice and the trial court found that defendant's claims were without merit. We agree.

## III

Defendant complains that the trial court erred on remand in failing to order a new trial based on "newly discovered evidence", namely, the testimony of a doctor who had operated on defendant seven days prior to the alleged statutory rape. In the case of *People v Keiswetter,* 7 Mich App 334, 343–344 (1967), this Court discussed the requirements of granting a new trial on the basis of newly discovered evidence:

"The rule concerning granting a new trial on the basis of newly discovered evidence requires that the following 4 factors must be present: (a) That the evidence is newly discovered, (b) that the evidence is not merely cumulative, (c) that the evidence is such as to render a different result probable on retrial, (d) that the defendant could not with reasonable diligence have produced it at trial. *People v Bauman,* 332 Mich 198 (1952); *People v Paugh,* 324 Mich 108 (1949)."

Defendant concedes that Doctor Kulik's testimony could have been presented at the time of trial, but seeks to avoid this problem by asserting the serious mistake of counsel rule laid down in *Degraffenreid, supra.* However, even if we assume a mistake of counsel, by Doctor Kulik's own admission, he could not conclusively state that the defendant could not have had intercourse on the day of the crime. The trial court even indicated that the failure to call Doctor Kulik may well have been deliberate strategy on the part of defendant's attorney calculated to avoid damaging cross-examination of the doctor regarding defendant's postoperative condition and defendant's activities on the day in question. As it turned out, even the defendant's own reference to his surgery was enough to prompt the prosecutor, upon cross-examining the

defendant, to bring to light the fact that the defendant was well enough to drive his pickup truck to a garage for repairs, participate in those repairs, and then return that truck to his home on December 17, 1970. Furthermore, after this case was remanded for consideration of this "newly discovered evidence", Mrs. Coffman was called to testify. She had not testified at trial. At the hearing, she stated that on the morning of December 17, 1970, she and the defendant had had sexual intercourse.

In short, we are not persuaded that Doctor Kulik's absence from the trial was the result of a serious mistake of counsel, nor that defendant's trial was a "sham" which would justify relief under *Degraffenreid, supra.*

## IV

Defendant contends that the trial court erred in denying defendant's motion for a mistrial based on the statement by the examining physician that in his opinion the complainant was telling the truth. This statement by Doctor Frailey was volunteered and unresponsive, made in spite of defense counsel's objection and the court's warning. Immediately after the statement, the jury was emphatically instructed to disregard it. In *People v Tutha,* 276 Mich 387, 393 (1936), the Court stated:

"A voluntary and irresponsive answer to a proper question is not error. *Hill v Robinson,* 23 Mich 24 [1871]; *People v Wilson,* 133 Mich 517 [1903].

" 'When a witness for any reason gives an irresponsive answer and which is not competent evidence, and the answer is suppressed at once, *the case must be a very peculiar and very strong one* which would justify a reversal for such fault or mistake of the witness.' *Hill v Robinson, supra.*

"'A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge; and if what he does or says improperly is likely to do much mischief, it is presumed the judge will apply the proper corrective in his instructions if requested to do so. In this case he applied it on the instant, so far as ruling out the improper statement could do so; and no doubt he would have given specific caution to the jury if requested.' *People v Mead,* 50 Mich 228 [1883]."

See also *People v Podsiad,* 295 Mich 541 (1940).

The trial court's denial of a motion for mistrial will not be reversed unless it is demonstrated that such a denial constituted an abuse of discretion. *People v Schram,* 1 Mich App 279 (1965). We are of the opinion that Frailey's remark was not so inherently prejudicial as to deny the defendant a fair trial. Although the doctor was vouching for the testimony of the complainant, this type of error is particularly amenable to a swift and sure instruction to disregard. The trial court immediately initiated remedial action. We find, therefore, no abuse of discretion in denying defendant's motion for a mistrial.

## V

Defendant contends that the prosecutor misstated material facts in his closing argument and that in so doing he deprived the defendant of a fair trial. The law in this State is that prejudicial remarks or incorrect statements by the prosecutor during closing argument are grounds for reversal only when an objection and curative instruction by the trial judge could not have rectified the situation. *People v Thomas Smith,* 30 Mich App 34 (1971), *aff'd* 388 Mich 93 (1972); *People v Latham,* 32 Mich App 198 (1971). In this case, if defendant

had objected, the trial court could have had the reporter read back the relevant testimony and could then have corrected the misstatement by the prosecutor.

## VI

Defendant complains that he should not have been convicted on the allegedly uncorroborated testimony of the complaining witness. First of all, complainant's testimony was corroborated to some extent by the examining doctor's testimony. While this testimony did not conclusively establish that the complainant had had sexual intercourse on December 17, 1970, it was to the effect that she had no hymen and that her vagina was enlarged. Such testimony was found to be indicative of penetration in *People v Scouten,* 130 Mich 620 (1902). Secondly, the rule in Michigan does not require that the complaining witness's testimony be corroborated. *People v Brocato,* 17 Mich App 277, 290 (1969).

## VII

Defendant alleges error in that the trial court allowed him to be questioned concerning his criminal record. It is within the discretion of the trial judge to allow examination of a witness concerning that witness's record of criminal convictions. MCLA 600.2158; MSA 27A.2158. The purpose of this statute is to assist a jury or trier of fact in determining the credibility of a witness. When a defendant takes the stand to offer testimony, his credibility can in fairness be subject to the same scrutiny as that of any other witness. *People v Di Paolo,* 366 Mich 394 (1962); *People v Cook,* 24

Mich App 401 (1970); *People v Butler,* 27 Mich App 404 (1970); *People v Cantrell,* 27 Mich App 210 (1970); *People v Payne,* 27 Mich App 133 (1970). Defendant contends, however, that his conviction record was irrelevant to his credibility at trial because his most recent conviction was 19 years prior to the case at bar. It is true that in *People v Farrar,* 36 Mich App 294 (1971), this Court emphasized the discretionary role of the trial judge in allowing or excluding such an examination of a defendant who takes the stand in his own defense. However, in the instant case, the trial judge was never asked to exercise his discretion. The only objections made by the defendant to the prosecutor's questioning in this area went to the form of the questions, not to the right to ask them. Since there is no authority for requiring a judge *sua sponte* to exclude such questioning, we find no error.

## VIII

It is argued that the trial court erred in failing to instruct the jury as to the limited use of evidence of other crimes. It was upon defense counsel's cross-examination of the complaining witness that she testified that she had engaged in prior acts of intercourse with the defendant, thus indicating that he had violated the law several times prior to December 17, 1970. Defendant now contends that the trial court should have instructed the jury as to the limited use of this evidence. In his instructions to the jury, the trial judge read from the information charging specifically that on December 17, 1970, the defendant had committed the acts enumerated therein. We are of the opinion that a further instruction was not necessary.

## IX

Defendant's last claim of error was that his sentence was illegal. The relevant portion of MCLA 750.520; MSA 28.788 reads as follows:

"Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years";

clearly then the defendant should have been sentenced to life or to a term of years, not five years to life. However, the trial judge recognized this error and entered an order amending defendant's sentence to 5 to 15 years in prison. Defendant contends that the amendment of his sentence was not properly the subject of a *nunc pro tunc* order and that he should have been present when his sentence was changed. It is proper for a trial judge who has erroneously imposed a lesser maximum sentence than required by law to correct that sentence by entering a *nunc pro tunc* order. *In re Pardee,* 327 Mich 13 (1950); *People v Robert A Smith,* 35 Mich App 349 (1971). Although the case at bar is distinguishable in that the maximum sentence was not mandatory, we do not believe that the defendant was harmed by not being present at the change of his sentence. A change from 5 years to life into 5 to 15 years was certainly not to the defendant's disadvantage. Indeed, the trial judge indicated when he entered his order that he was merely making a clerical correction of an improper recital.

Affirmed.

All concurred.