PEOPLE v BOHM

1. LARCENY—IN A BUILDING—SIMPLE LARCENY—DISCRETION.

   The decision to charge a defendant with the felony of larceny in a building instead of the misdemeanor of simple larceny is in the sound discretion of the prosecuting attorney (MCLA 750.356, 750.360).

2. ARREST—WITHOUT WARRANT—SUBSEQUENT PROCEEDINGS—LEGALITY.

   A challenge to the legality of a defendant's arrest on the ground that the complainant did not have personal knowledge of the facts asserted in her complaint cannot be considered at trial where the defendant was legally arrested without a warrant.

3. ARREST—COMPLAINT AND WARRANT—LEGALITY—PRESERVING QUESTION.

   A defendant who fails to object to the validity of the arrest warrant or the complaint upon which it is based at the arraignment when the trial court obtains jurisdiction of him by the filing of an information by the prosecuting attorney, and de-

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur 2d, Larceny § 44.
[2, 3] 5 Am Jur 2d, Arrest §§ 22 *et seq.,* 116
   41 Am Jur 2d, Indictments and Informations § 286.
[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[4] 21 Am Jur 2d, Criminal Law §§ 610–615.
   50 Am Jur 2d, Larceny §§ 178, 179.
[5] 5 Am Jur 2d, Appeal and Error § 404.
   21 Am Jur 2d, Criminal Law § 255.
[6] 21 Am Jur 2d, Criminal Law §§ 454, 456.
[7, 8] 53 Am Jur, Trial §§ 699, 701.
[8, 9] 53 Am Jur, Trial §§ 568, 650, 651.
[10–12] 68 Am Jur 2d, Searches and Seizures §§ 37, 92–98.
   Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.
   Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.
[13] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.

fendant pleads thereto, cannot thereafter object to either the complaint or warrant.

4. LARCENY—IN A BUILDING—SENTENCE—CRUEL AND UNUSUAL PUNISHMENT.

A sentence of from two to four years for conviction of larceny in a building does not shock the conscience of the Court of Appeals and therefore does not constitute cruel and unusual punishment.

5. CRIMINAL LAW—APPEAL AND ERROR—TRANSCRIPTS—COURT RULES —RIGHT TO SPEEDY TRIAL.

A defendant's right to a speedy trial was not abridged when he was not provided transcripts for purposes of appeal within the time period set out by court rule where the defendant has had a full review of his case in the Court of Appeals (GCR 1963, 812.3[1]).

6. CRIMINAL LAW—ARRAIGNMENT—DELAY—PREJUDICE.

A delay of three days after a defendant's arrest before his arraignment was not so prejudicial as to require a reversal where a legal holiday and a Sunday were the intervening days and where the trial judge found no delay for the purpose of extracting a confession and no error in the arraignment procedure (MCLA 764.13).

7. CRIMINAL LAW—FAILURE TO TESTIFY—INSTRUCTIONS TO JURY.

Failure of a trial court to give a customary instruction to the jury concerning a defendant's failure to take the witness stand was not error where there was neither a request for such an instruction nor an objection to its omission.

8. CRIMINAL LAW—RIGHT TO REMAIN SILENT—INSTRUCTIONS TO JURY —THEORY OF DEFENSE.

An instruction to a jury that the defense did not "deny" that a crime had been committed but claimed rather that the prosecution had not given sufficient evidence of identification was not an abridgment of a defendant's right to remain silent because it represented a testimonial conclusion of the defendant himself who did not take the stand; the court was not referring to anything said by the defendant, but rather was recapitulating defendant's counsel's theory of the case.

9. CRIMINAL LAW—INSTRUCTIONS TO JURY.

It is not reversible error to charge a jury in accord with a defendant's theory of defense absent defense counsel's request to more fully state the applicable law or an objection to the charge.

10. SEARCHES AND SEIZURES—WITHOUT WARRANT—ARREST—REASON-
    ABLENESS.

A thorough search of a defendant after he had been once patted
down for weapons was not improper where the officers had
reasonable cause to believe that a felony had been committed
and that the defendant was the person who had committed it,
and where the second search was made contemporaneously
with the lawful arrest of the defendant in search of possible
weapons not discovered by the first patting down and to dis-
cover the fruits of the crime, possible means of escape, and to
prevent the destruction of evidence of the crime.

11. SEARCHES AND SEIZURES—EVIDENCE—VISIBLE OBJECTS—ADMISSI-
    BILITY.

Evidence observed in open view by an officer looking through the
rear window of an automobile was admissible against a defend-
ant charged with larceny where the officer had a lawful right
to be in the place from which he observed the evidence; the
officer had such a lawful right where the registration and keys
to the automobile involved had been seized from the defendant
after his arrest, the automobile was parked in a public parking
lot, and the automobile was comparatively close to where
defendant had been arrested.

12. SEARCHES AND SEIZURES—WITHOUT WARRANT—AUTOMOBILES—
    REASONABLENESS.

Search of an automobile without a warrant is proper where the
officers conducting the search have reasonable or probable
cause to believe that they will find the instrumentality of a
crime or evidence pertaining to a crime before they begin their
search.

13. CRIMINAL LAW—ASSISTANCE OF COUNSEL.

The rule that a defendant is entitled to effective assistance of
counsel does not mean that the defendant is entitled to the
effective assistance of counsel to the degree that he is assured
of a successful defense and acquittal.

Appeal from Macomb, Howard R. Carroll, J.
Submitted Division 2 June 20, 1973, at Lansing.
(Docket No. 16029.) Decided August 30, 1973.
Leave to appeal applied for.

Ronald J. Bohm was convicted of larceny in a
building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus E. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*William M. Havey,* for defendant on appeal.

Before: HOLBROOK, P. J., and DANHOF and ADAMS,* JJ.

HOLBROOK, P. J. Ronald J. Bohm, defendant herein, was tried before a jury and found guilty of larceny in a building, contrary to MCLA 750.360; MSA 28.592.[1] He was sentenced to prison for a term of from two to four years. A motion for a new trial and a petition for a writ of habeas corpus were denied by the trial court, and defendant now brings this appeal.

The complaining witness, Rosemarie Brooks, her sister, and her sister's fiance, a Mr. Kamradd, arrived at the Playgrounds Bar at approximately 8:30–9 p.m. on New Year's Eve. Miss Brooks had a silver-colored purse containing approximately $10 with her and placed it on her table. At a time when she was dancing, two witnesses testified that they saw the defendant come by the table, pick up the purse, and leave hurriedly through the front

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The complaint, warrant, and information filed against defendant were in the following language in part:

"that heretofore, to wit: on or about the 31st day of December A. D. 1971 at the City of St. Clair Shores and in the county aforesaid [Macomb] One Ronald Joseph Bohm did commit the crime of larceny in a bar, to-wit: Playgrounds Bar located at 32307 Harper Avenue, St. Clair Shores, Michigan, by then and there feloniously stealing, taking and carrying away certain personal property, goods and chattels, to-wit: purse and contents the property of Rosemarie Brooks from the possession of the said Rosemarie Brooks, then and therein being found contrary to MCLA 750.360; MSA 28.592."

door. Miss Brooks said she saw the defendant as he exited from the bar. Several persons followed the defendant out the front door, but he was not seen again until one of those searching for him outside stated he saw the defendant walk past the front entrance and go to the rear entrance which he entered. Defendant was physically described by the witnesses and identified also by the way he walked and danced. He was also described as wearing a white shirt open at the neck without a jacket. When defendant came in the back entrance Mr. Kamradd and another person took charge of him until the police arrived. The other person and Mr. Kamradd forcibly seized the keys to defendant's automobile from the defendant.

After questioning the witnesses, the police arrested the defendant and took him in custody. After being arrested the defendant was taken to the patrol car where he was patted down and given his Miranda warnings by Officer Marengo. While two other officers were searching for a Chevy II automobile, Officer Marengo requested of the defendant identification papers. The defendant responded by giving the officer his selective service card and registration to his Cadillac automobile. At that point in time defendant was removed from the patrol car and the officer testified: "we researched him and Officer Jenny left with a set of keys and the registration to the Cadillac". Finding the Cadillac they approached it cautiously, Officer Bankard on the right side and Officer Jenny on the left side. Officer Jenny spotted a purse on the back floor space of this car. Officer Bankard confirmed the sighting by looking through the window and saw the purse partially sticking out of a rolled-up floor mat. The purse was retrieved by the two officers and returned to the complaining witness who identified it as her purse.

Defendant at that time and ever since has consistently denied he took the purse, that it must have been someone else. At the trial the defendant called Mr. Roy Sontag who testified that an individual by the name of John Crooks who was dressed similarly to defendant on the night in question and who was present in the bar had in fact taken the purse.

Defendant raises eight issues on appeal. We consider them in our order.

## I

The claim of defendant that the prosecuting attorney was guilty of abuse of discretion in charging him with larceny in a building, MCLA 750.360; MSA 28.592, rather than with larceny, MCLA 750.356; MSA 28.588, is not tenable in that this Court in *People v Jackson,* 29 Mich App 654, 655–656; 185 NW2d 608, 609 (1971), ruled as follows:

"Defendant would be guilty under either of the larceny statutes. The Legislature has obviously decided that larceny in a building presents a social problem separate and apart from simple larceny and that all larcenies in a building, value being irrelevant, deserve felony status. See *Black v Gladden,* 237 Or 631; 393 P2d 190 (1964).

"The decision to charge the defendant with the felony instead of a misdemeanor is in the sound discretion of the prosecuting attorney. *People v Lombardo,* 301 Mich 451; 3 NW2d 839 (1942); *People v Birmingham,* 13 Mich App 402; 164 NW2d 561 (1968); *People v Eineder,* 16 Mich App 270; 167 NW2d 893 (1969)."

## II

The claim of defendant that the complaint, warrant, municipal court's return to the circuit court,

and the information were inaccurate and misleading so that he was unable to formulate a defense, is likewise untenable. *People v Jackson, supra,* p 656; 185 NW2d at 609, reads as follows:

"Defendant's arguments that the felony-larceny statute is vague and uncertain and that he was denied equal protection of the laws are without merit. It is clearly within the discretion of the Legislature to distinguish simple larceny and larceny in a building as separate social evils."

Also see *People v Husted,* 52 Mich 624; 18 NW 388 (1884). The charge stated that the larceny took place in a "bar" which is obviously a building.

Defendant further claims that the complainant did not have personal knowledge of the facts she asserted in her complaint and that, therefore, the testimony of other witnesses should have been furnished the municipal judge before the issuance of the warrant. We rule that in cases such as this one where defendant was arrested without a warrant, the legality of a defendant's arrest cannot be considered at trial. *People v Miller,* 235 Mich 340; 209 NW 81 (1926); *People v Henry Robinson,* 37 Mich App 115; 194 NW2d 537 (1971), and *People v Nawrocki,* 6 Mich App 46; 148 NW2d 211 (1967). Defendant raised this issue for the first time in his motion for a new trial. Further, we rule that where a defendant fails to object to the validity of the arrest warrant or the complaint upon which it is based at the arraignment when the trial court obtains jurisdiction of him by the filing of an information by the prosecuting attorney and defendant pleads thereto, that he cannot thereafter object to either the complaint or the warrant. *People v Licavoli,* 256 Mich 229; 239 NW 292

(1931); *United States ex rel Penachio v Kropp,* 448 F2d 110, 111 (CA 6, 1971).

## III

Defendant asserts that his sentence to prison of from two to four years constitutes cruel and unusual punishment.

This issue is ruled by *People v Jackson, supra,* which involved a defendant convicted of the same crime as the defendant herein and received the same sentence. In *Jackson* the Court held that the sentence was not such as to shock the conscience of the Court and was therefore not cruel and unusual. Also see *People v Sinclair,* 387 Mich 91; 194 NW2d 878 (1972).

## IV

It is defendant's claim that his right to a speedy trial was abridged when he was not provided transcripts within the time period set out by GCR 1963, 812.3(1).

The defendant's position on this issue is without merit. In *People v Gorka,* 381 Mich 515, 520; 164 NW2d 30, 32 (1969), it is stated:

"Nevertheless, the defendant has had a full review of his case in this Court. The circuitous appellate route in this case, caused in part by the dilatoriness and violations of court rule by the court reporter and counsel, has not diminished the right of appeal. He has received from this Court the same appellate review he would have received from the Court of Appeals under an appeal of right. The fact that defendant, on his appellate route, encountered numerous procedural detours, some of his own making, does not compel this Court to grant him a new trial."

# V

The defendant claims that his constitutional rights of due process and equal protection were violated when he was held for three days after arrest before his arraignment.

The facts are that the defendant was arrested at approximately 11 p.m., on Friday, December 31, 1971, and held at the police station until Saturday, January 1, 1972, New Year's Day. At approximately 7:35 p.m. the defendant was transferred to the Macomb County jail. On Monday morning, January 3, 1972, the first legal day after the arrest, he was arraigned. MCLA 764.13; MSA 28.871(1), provides:

"A peace officer who has arrested a person for a felony offense without a warrant must without unnecessary delay, take the person arrested before the most convenient magistrate of the county in which the offense was committed, and must make before the magistrate a complaint, stating the offense for which the person was arrested."

Under the circumstances in this case was the delay so prejudicial as to require a reversal under the ruling in the case of *People v Hamilton,* 359 Mich 410; 102 NW2d 738 (1960)?

In the recent case of *People v Farmer,* 380 Mich 198, 205–206; 156 NW2d 504, 507 (1968), the applicable test to apply to this issue is stated as follows:

"It is maintained that the detention of defendant for three days—72 hours—from the morning of January 11, 1958, to the morning of January 14, 1958, before arraignment was such a lengthy detention as to render the confession involuntary. While this Court has repeatedly condemned the practice of undue detention, the test as to whether such a detention renders a confession involuntary is not the reasonableness of the length of

time a person is detained but whether the detention has been used to coerce a confession. As was said in *United States v Mitchell,* 322 US 65, 70; 64 S Ct 896, 898; 88 L Ed 1140, 1143 (1943):

" 'There was no disclosure induced by illegal detention.'

"The duty to arraign and the nature of an improper delay has been stated by the United States Supreme Court in *Mallory v United States,* 354 US 449, 455; 77 S Ct 1356, 1359–1360; 1 L Ed 2d 1479, 1483 (1957), as follows:

" 'The duty enjoined upon arresting officers to arraign "without unnecessary delay" indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. *But the delay must not be of a nature to give opportunity for the extraction of a confession.'* (Emphasis supplied.)"

In passing on this particular issue the trial judge noted no such confessional impropriety and found no error in the arraignment procedure. Also see *People v Dawson,* 29 Mich App 488; 185 NW2d 581 (1971). We rule that no prejudicial error occurred as to this issue.

## VI

Defendant claims that the trial judge gave instructions which were erroneous, prejudicial, and procedurally improper, and that no opportunity to object to the instructions was afforded the defendant.

First, defendant asserts it was error for the court to fail to give the customary instruction to the jury concerning the defendant's failure to take the witness stand.

Defendant did not request the court to give the

instruction nor did he object to its omission in the instructions. It is the choice of the defendant as to whether the instruction in question be given. *People v Abernathy,* 29 Mich App 558, 561; 185 NW2d 634, 636 (1971); *People v Moore,* 39 Mich App 329; 197 NW2d 533 (1972). It is noted that although the record does not show that defendant's counsel was asked if he had any objections to the instructions or additional instructions, the record is clear that he made no objections. The record also discloses that counsel was given every opportunity throughout the trial to be heard and was never refused to be heard. We are convinced that had defendant's counsel voiced any objections to the instructions the trial judge would have been receptive to hearing them. There being no request for the instruction or objection to its omission, we rule no error resulted.

Next defendant claims that the instructions violated his constitutional rights when the trial judge gave the following comment: "But the defense, they don't deny that somebody stole this purse. They don't deny it but they say it was not this man and they say the prosecution has not given sufficient evidence." It is claimed that through this statement the defendant's right to remain silent was abridged because it is representative of a testimonial conclusion of the defendant himself who did not take the stand. We do not agree. The comment was not violative of defendant's Fifth Amendment rights. The court was not referring to anything said by the defendant, but rather was recapitulating defendant's counsel's theory of the case. *People v Laine,* 31 Mich App 271, 272; 187 NW2d 505, 506 (1971). The following excerpt is from defense counsel's opening statement:

"I am going to make a brief opening statement to you

now for the simple reason that we intend to interpose a defense in this cause that there is mistaken identity and we will produce a witness who will tell you under oath that there was somebody else who committed this crime."

In his closing argument he stated:

"We say that John Crooks, who was a real person even though the bartenders can't identify him, but they couldn't identify a lot of people in their bar. He's a real person and he's the one who committed this larceny, not the defendant, and we'll ask you to find the defendant not guilty."

These excerpts clearly indicate that the trial court's comment was in accord with defendant's trial strategy and theory of defense.

Defendant asserts that the charge was improper because it did not fully state the applicable law and because the issue was too narrowly defined by the court. The trial court's reference to larceny did not include the statement "in a building". The trial judge read the information wherein larceny in a building was charged. Also the theory of defendant's defense did not contest the fact that the crime had been committed, but only that the defendant was not the person that did it. The sole controversy in the case was over *who* committed the crime charged. Absent a request to charge or objection to the charge, we rule it was not reversible error to charge the jury in accord with the defendant's theory of defense. *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972); *People v Griffen,* 36 Mich App 368; 194 NW2d 104 (1971). Also see *People v Wilbourne,* 44 Mich App 376, 378; 205 NW2d 250, 252 (1973); *People v Cardenas,* 21 Mich App 636; 176 NW2d 447 (1970).

Other claimed errors in the instructions asserted

by the defendant have been properly considered and we find that the jury charge when considered as a whole discloses no reversible error present. *People v Pigues,* 33 Mich App 349; 189 NW2d 715 (1971).

## VII

The defendant claims that the search of his person conducted after he had been arrested, patted down, and placed in a police car was unreasonable.

In the case of *People v McDonald,* 13 Mich App 226, 232–233; 163 NW2d 796, 799–800 (1968), it is stated in part:

"The Constitutions do not prohibit all warrantless searches. Where a warrant has not been obtained, the validity of the search depends upon the law's appraisal of the reasonableness of the search, only unreasonable warrantless searches and seizures being barred. Searches, incident to a lawful arrest, or following hot pursuit for instruments used in the commission of crime, its fruits, contraband and means of escape, have been held to be reasonable."

The objection here noted pertains to the search resulting in the finding of the 1962 Cadillac keys on defendant's person. It also pertains to the alleged unlawful search of the 1962 Cadillac and seizure of the silver purse.

Defendant did not make a motion to suppress the purse prior to trial. However, when defendant objected to the admission of the purse into evidence, the trial court did receive testimony outside the presence of the jury touching the legality of the search of the defendant and the admissibility of the purse. The pertinent facts pertaining to the issue show that after being arrested the defendant

was patted down for weapons and none were found. He was then asked to furnish an identification and defendant produced a registration to the 1962 Cadillac and a selective service card. At that time the officers made a thorough search of the defendant and found the keys to the Cadillac automobile. Officers Jenny and Bankard with the keys and the registration for the Cadillac automobile found the Cadillac in the parking lot in front of the bar. They observed through the back window the partially exposed silver purse on the back floor of the car. They then seized the purse and took it to the complaining witness who identified it as hers.

The defendant asserts that the search of the defendant after he had been once patted down for weapons was improper and an unlawful search of his person. A thorough search of a defendant after a cursory search was upheld in the case of *People v Arnold,* 23 Mich App 517, 520; 179 NW2d 45, 46 (1970). The facts in *Arnold* were very similar to the facts in the instant case as they appear in the opinion:

"While defendant was lying on the ground, the officers conducted a cursory search for obvious weapons. Upon finding none, all three returned to the police car where a further search was made. This search of the defendant's person revealed a packet of marijuana. He was arrested and charged with the possession of narcotics, a violation of MCLA 335.153; MSA 18.1123."

This so-called second search was a thorough one and was made contemporaneously with the lawful arrest of the defendant and in search of possible weapons not discovered by the first patting down of the defendant and to discover the fruits of the crime, possible means of escape, and to prevent the destruction of the evidence of the crime.

Under the facts herein stated, we agree with the ruling of the trial court that the officers had reasonable cause to believe that a felony had been committed and that the defendant was the person who had committed it. MCLA 764.15; MSA 28.874. We rule that the thorough search of the defendant was proper.

At this point in time the officers had the registration and keys for the 1962 Cadillac. The Cadillac was still in the public parking lot at the bar where it had been parked and comparatively close to where defendant had been arrested. The silver purse in question was observed in open view by looking through one of the rear windows of the automobile.

It was stated in the case of *People v Tisi,* 384 Mich 214, 218; 180 NW2d 801, 803 (1970), in part as follows:

"Defendant asserts that the search of his automobile and the seizure of the knife and sheath were beyond the permissible scope of a search incident to an arrest. *Preston v United States,* 376 US 364; 84 S Ct 881; 11 L Ed 2d 777 (1964); *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969). *Preston* and *Chimel* are not in point. Justification for the seizure in this case is not to be tested by the reasonableness of its relationship to a prior valid arrest. *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963).

"In the recent case of *Harris v United States,* 390 US 234, 236; 88 S Ct 992, 993; 19 L Ed 2d 1067, 1069 (1968), the Court said:

" 'It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' "

Also see *People v Jenkins,* 23 Mich App 39; 178 NW2d 103 (1970).

The open view rule is applicable to the facts in the instant case and we agree with the trial court's ruling that the silver purse was admissible, it having been seen in plain view by the officers from a place they had a lawful right to be.

It has also been determined that a search of an automobile is proper where the officers conducting the search have reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search. This rule was stated in the case of *People v Danny Williams,* 383 Mich 549, 555; 177 NW2d 151, 154 (1970):

"In *Dyke v Taylor Implement Mfg Co, Inc,* 391 US 216, 221; 88 S Ct 1472, 1475; 20 L Ed 2d 538, 543 (1968), the United States Supreme Court, after reviewing *Preston v United States,* 376 US 364; 84 S Ct 881; 11 L Ed 2d 777 (1964) and *Cooper v California,* 386 US 58; 87 S Ct 788; 17 L Ed 2d 730 (1967), stated:

" '*Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. Brinegar v United States,* 338 US 160; 69 S Ct 1302; 93 L Ed 1879 (1949); *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543; 39 ALR 790 (1925). The cases so holding have, however, always insisted that the officers conducting the search have "reasonable or probable cause" to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search.' (Emphasis added.)"

The facts herein clearly show that the seizure of the silver purse was justified under either the plain view doctrine or the search and seizure doctrine where the officers conducting the warrantless search had reasonable or probable cause to believe that the instrumentality of a crime or evidence pertaining to a crime would be found

before beginning the search.[2] We find no reversible error present as to this issue.

## VIII

Defendant claims he was denied the right to effective counsel.

There is no question but that defendant is correct in his claims that he was entitled to the effective assistance of counsel. *York v McLeod,* 283 P2d 567 (Okla Crim App, 1955), *cert den,* 350 US 839; 76 S Ct 78; 100 L Ed 749 (1955). Many of the cases reaching this Court contain the claimed error that trial counsel was ineffective and seek a new trial for that reason. We acknowledge that there is rarely a case where a different attorney after carefully reviewing the trial transcript will agree with all the trial tactics, actions, or nonactions of trial counsel at the trial. Of course, we do not have any appeals except where a defendant has been convicted. The rule that a defendant is entitled to effective assistance of counsel does not mean that the defendant is entitled to the effective assistance of counsel to the degree that he is assured of a successful defense and acquittal. This Court in the case of *People v Lawrence,* 32 Mich App 591, 593–594; 189 NW2d 48, 50 (1971), interpreted the rule enunciated in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), as follows:

"From the time this Court enunciated the so-called *'Degraffenreid* rule', it has become one of the most frequently cited and most misunderstood of our decisions. *Degraffenreid* should not be read by the bar to

---

[2] The officers in the present case had reasonable cause to believe that the fruits of the crime, the silver purse, would be found in the 1962 Cadillac automobile.

mean that because an objection could have been made or that some right was waived that this necessarily indicates incompetence of counsel or prejudice to the defendant. As the ones to whom the conduct of the trial and the choice of strategy have been entrusted, trial counsel may reasonably believe it advantageous, at times, to forego exercising certain rights for tactical reasons. On appeal it behooves us not to play the part of the Sunday morning quarterback and to second-guess him.

"Usually omitted from appellants' quotations of Degraffenreid is the limiting and cautionary language that is often repeated in the opinion.

" 'Most post-conviction claims of disgruntled clients are indeed insubstantial.' *Degraffenreid, supra* [p 711; 173 NW2d at 321].

"We would not be understood by what we have said here to dilute the *Degraffenreid* doctrine. We mean rather that it should be carefully read before reversible error is claimed on the grounds of the incompetence of counsel. Such incompetence must be grave indeed to be raised to the constitutional level of no assistance of counsel."

After a careful review of the entire record, it cannot be said that defendant did not have the effective assistance of counsel.

Affirmed.

All concurred.