## PEOPLE v JAMES

1. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—INDORSEMENT
   —EXCEPTIONS.

   Production of a res gestae witness, generally required to be indorsed on the information and produced for examination at trial, may be excused where there is a showing of due diligence in an attempt to locate and produce the witness, or where the testimony of the witness would be merely cumulative.

2. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—JUDICIAL DISCRETION.

   A trial court's decision to excuse the people from producing a res gestae witness will not be reversed unless there is a clear abuse of the trial court's discretion.

3. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—DILIGENCE.

   Due diligence in an attempt to locate and produce a res gestae witness was not shown where the efforts of the prosecutor were only that before trial a police officer left a message with an unknown person at a telephone number, without checking further to determine the address for which the number was listed or checking for a new telephone listing for the witness, and after direction from the trial court, on the second day of trial an officer went to the address for which the telephone number was listed, found the witness's name on the mailbox, and contacted various neighbors and the landlord.

4. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—INDORSEMENT.

   A request made by defense counsel at the beginning of the first day of trial that a res gestae witness be indorsed and produced was timely.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 41 Am Jur 2d, Indictments and Information §§ 56, 60.
[2, 3] 58 Am Jur, Witnesses § 627 *et seq.*
[5, 7, 8] 21 Am Jur 2d, Criminal Law § 585.
[6] 53 Am Jur, Trial §§ 143–146, 565.

5. CRIMINAL LAW—SENTENCING—PRIOR CONVICTIONS.

A trial court does not have the duty *sua sponte* to exclude questioning a defendant about his prior convictions and there was no reversible error committed where defendant's counsel asked all but one of the questions at issue and did not object to the prosecutor's questioning about a prior misdemeanor conviction.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—INTOXICATION—WAIVER OF OBJECTION.

No error was committed by the trial court's failure to instruct the jury on the defense of intoxication where the crimes at issue included specific intent as a necessary element thereof but where the defendant raised no objection at trial, such an instruction was not requested by defense counsel, and no evidence of intoxication was presented (GCR 1963, 516.2).

7. CRIMINAL LAW—SENTENCING—PRIOR CONVICTIONS.

It was not error for a judge to consider prior convictions which a defendant alleges were constitutionally infirm when sentencing the defendant where the validity of those prior convictions had not been previously determined by an appellate process.

8. CRIMINAL LAW—SENTENCING—PRIOR ARRESTS—PENDING CASES.

Mere awareness of a sentencing court of other cases pending against a defendant does not constitute reversible error where the court does not express any opinion as to defendant's guilt or innocence in those pending cases and does not rely in any way on those arrests which did not result in conviction when sentencing.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 January 8, 1974, at Lansing. (Docket Nos. 16287, 16288.) Decided March 5, 1974. Leave to appeal applied for.

Lafayette James was convicted of breaking and entering with intent to commit felonious assault and of assault with intent to do great bodily harm less than murder. Defendant appeals both convictions. Conviction of breaking and entering with intent to commit felonious assault remanded with directions. Conviction of assault with intent to do great bodily harm less than murder affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Assistant Prosecuting Attorney, for the people.

*Francis Zebot,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and DANHOF and ALLEN, JJ.

ALLEN, J. Two cases were consolidated and tried before a jury which, in case 16288, found defendant guilty of breaking and entering with intent to commit felonious assault, MCLA 750.110; MSA 28.305, and in case 16287 found defendant guilty of assault with intent to do great bodily harm less than murder, MCLA 750.84; MSA 28.279. Defendant received respective concurrent sentences of 5 to 15 years and 5 to 10 years in prison and appeals.

On the evening of April 8, 1972, Cassandra Cleveland was having a birthday party in her apartment. At about 9 p.m., defendant, an uninvited guest, arrived at the party and remained for about an hour. After an argument with Cassandra's sister, defendant was directed to leave the party. The party continued until the early morning hours of April 9, 1972. At about 5 a.m. on that day, Cassandra responded to a knock on the kitchen door. She opened the door, recognized defendant, slammed the door shut and locked it. With the assistance of Eugene Harris, Cassandra returned to the back door, unlocked it, and noticed that defendant was holding a gun. She and Harris slammed the door. Defendant broke the full-length glass window located in the door, and pointed his gun at Cassandra. She grabbed the barrel of the

gun, diverting it away from herself. The gun discharged, and Harris pushed her to the floor. Defendant then fled.

At the time of the incident, Harris, Cassandra, and James Taylor, Jr., Cassandra's father, were in the kitchen. Mr. Taylor corroborated his daughter's testimony, and identified defendant as the assailant. While Harris was indorsed on the information as a res gestae witness pursuant to defendant's motion on the first day of trial, he was not produced at trial. His production was excused by the trial court on the alternate grounds that due diligence had been shown and that Harris' testimony would have been cumulative.

Responding to a radio call regarding the incident, Ypsilanti police officers arrived at Cassandra Cleveland's apartment at approximately 5:10 a.m. They took down the names of those people present, including that of Harris. This event occurred on April 9, 1972, and trial was not held until October 17, 1972.

While on the back porch looking for empty shell casings, one officer observed defendant standing near a building located across the parking lot, saw defendant raise a gun to his shoulder, saw a muzzle flash, heard a shot being fired, and then heard a bullet ricochet off the metal clothes pole located about ten feet from the rear door. The second officer also observed defendant pointing his gun and discharging it toward the officers. Defendant fled in an automobile and was unsuccessfully pursued by the officers.

About one hour later, defendant was located at Patricia Taylor's duplex apartment. Ms. Taylor was unrelated to the other Taylors involved in the above incident. She let the officers into her home and they saw defendant lying on the living room

couch. The officers grabbed him, a brief struggle ensued, and defendant was arrested. The officers found that defendant had been lying upon a sawed-off .22-caliber rifle. A .25-caliber automatic pistol was found in defendant's pocket. The officers also discovered a clip for a .22 rifle and a live .22 shell under a couch cushion.

A spent .22-caliber shell casing was located near the area from which defendant had fired upon the officers. This shell later proved to have been fired from the gun found in defendant's possession at the time of his arrest. Three live .22 shells were also found near the rear door to Cassandra Cleveland's apartment.

Defendant testified that after leaving the party, he returned to Cassandra's apartment and knocked on the kitchen door. He said that it was opened, slammed in his face, and that the glass broke. Defendant said that as he was walking away, he heard a gunshot and ran towards Patricia Taylor's residence.

At the beginning of the first day of trial, defense counsel moved to have Eugene Harris indorsed on the information as a res gestae witness. After the prosecutor told the trial court that Harris had not been located, the trial court ordered Harris to be added as a res gestae witness, and instructed the police officers to exercise due diligence in locating him. A hearing in the absence of the jury disclosed the following efforts to locate Harris:

Officer Stenning said that shortly before trial, he went to Harris' Sheehan Drive address with a subpoena and was told by a neighbor that Harris had moved. He said that he "did some running around" and checked with various people in the neighborhood. He then discovered Harris' telephone number and testified that he "made contact

with a female" who supposedly told the officer that she would contact Harris regarding the case.

However, Harris never made any contact with the police officer. The officer received no response when he telephoned the above telephone number on the first day of trial. He said that he had made repeated attempts to contact someone at that number, but that no one had answered the phone. Other witnesses supposedly told the officer that Harris had moved from the Sheehan Drive address.

Officer Stenning stated that the Ypsilanti Police Department had a "double entry type of (telephone) directory" but that he did not use this directory to locate the address which corresponded to the telephone number. He stated that he had failed to contact the telephone company to determine if there was a new listing for a Eugene Harris, and that he had relied upon the person who answered the phone and who had told him that she would contact Harris. Officer Stenning failed to check the hospitals or jails to see if Harris could be located therein.

The circuit judge found that the people had used due diligence in an attempt to locate Harris, and that in any event, his testimony would have been cumulative. The circuit court ordered the prosecutor to give defense counsel the telephone number to which the police officer had referred. The officer was directed to use the double entry telephone book to determine the address at which the telephone number was located. The trial court felt that defense counsel could exercise the " * * * subpoena power to subpoena the witness if he wishes".

After the noon recess on that second day of trial, Officer Adams said that he had used the double

entry telephone book and found that the number was listed to Sue Johnson, 1440 Pear Street, Ann Arbor. Officer Adams went to that address, discovered Sue Johnson's name on the mailbox, as was the name of Eugene Harris. The officer contacted various neighbors, and discovered that Harris was not known in the area. The landlord was contacted, and Officer Adams found that Harris was not listed as a tenant. The circuit court judge then "reaffirmed" its earlier ruling that the people had exercised due diligence in an attempt to locate Harris. The prosecutor was then excused from presenting Mr. Harris as a witness and defendant claims this was error.

A trial court's decision to excuse the people from producing a res gestae witness will not be reversed unless there is a clear abuse of the trial court's discretion. *People v Bersine,* 48 Mich App 295, 302; 210 NW2d 501 (1973). Our Court must determine whether the trial court abused its discretion in view of defendant's right to a fair trial. *People v Harrison,* 44 Mich App 578, 585; 205 NW2d 900 (1973). The people have argued that the trial court did not abuse its discretion, and that defendant had failed to make a timely request to have Mr. Harris indorsed.

Contrary to the people's assertions, defense counsel made a timely request to have Mr. Harris indorsed and produced as a res gestae witness. Defendant has not waived any objection as far as this issue is concerned. *People v Harrison,* 44 Mich App 578, 586–587; 205 NW2d 900 (1973). Defense counsel's request came at the very beginning of the first day of trial, and was not met with an argument by the prosecutor that the request was something less than timely.

Generally, all res gestae witnesses must be in-

dorsed on the information and produced for examination at trial. MCLA 767.40; MSA 28.980. Two relevant exceptions to this rule are that production may be excused on a showing of due diligence in an attempt to locate and produce the witness, and production may be excused where the testimony of the witness would be merely cumulative. *People v Bennett,* 46 Mich App 598, 619; 208 NW2d 624 (1973), *lv to app granted* 390 Mich 772 (1973). The record before us does not establish the use of due diligence in an effort to locate and produce Harris, nor does it establish that his testimony would have been merely cumulative.

However, rather than to order what might turn out to be a "useless new trial", but to "avoid a possible miscarriage of justice" we adopt the remedy utilized by the Michigan Supreme Court in the recent decision of *People v Robinson,* 390 Mich 629, 633; 213 NW2d 106 (1973). Relying upon GCR 1963, 820.1(5), we retain jurisdiction of case 16288 and remand to the trial court for a hearing to determine whether or not Harris' testimony would have been cumulative. The trial judge shall require the prosecutor to produce Harris at a hearing within 45 days from the release of this opinion. Harris "shall be examined regarding his knowledge of the crime of which the defendant was convicted". 390 Mich 629, 634.

At the conclusion of the hearing, the trial judge shall either grant defendant a new trial, or shall within ten days after the end of the hearing state his reasons for denying defendant a new trial. The trial judge's findings and a transcript of the hearing shall be forwarded to this Court. Defendant may file a supplemental brief within 15 days after the trial court reaches its decision, and the people may file their brief within 15 days after receipt of defendant's brief.

If Mr. Harris cannot be located, the prosecutor must "bear the consequences" of the same, and defendant shall be granted a new trial. *People v King,* 50 Mich App 487, 491; 213 NW2d 597 (1973).

In addition to the res gestae issue, defendant claims six errors which affect both cases 16287 and 16288 and are asserted as grounds for reversal of each. First, defendant alleges that reversible error was committed when he was questioned about his prior criminal convictions. Defense counsel asked defendant all but one of the questions at issue, and failed to object to the prosecutor's question about a 1967 misdemeanor conviction. We find no merit to defendant's argument. *People v Wilbourne,* 44 Mich App 376, 381; 205 NW2d 250 (1973). The trial court does not have the duty to *sua sponte* exclude such questioning. *People v Coffman,* 45 Mich App 480, 489; 206 NW2d 795 (1973).

Second, defendant argues that the trial court failed to instruct the jury on the limited use of defendant's prior convictions. A reading of the transcript clearly discloses that the instruction at issue was given by the trial court.

Third, defendant contends that because both of the crimes at issue included specific intent as a necessary element thereof, the trial court erred when it failed to instruct the jury that defendant's intoxication would be a defense to the specific intent crimes. It is also argued that the trial court failed to distinguish between specific and general intent as far as the defense of intoxication was concerned.

No objection was raised at trial, nor did defense counsel request such an instruction. According to GCR 1963, 516.2, defendant's claim of error has been waived. Also, defendant presented no evidence of intoxication, and his argument on this point is without merit.

Fourth, defendant asserts the trial court's instruction on lesser included offenses was coercive, unduly restricted the jury in their right to find defendant guilty of a lesser included offense and violated the integrity of defendant's right to a jury trial. Defendant relies upon *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), for this assertion.

Read in their entirety, the instructions on lesser included offenses do not support defendant's position. Contrary to the situation presented in *Ray,* there was no "requirement of unanimous agreement on defendant's innocence of the greater charge before discussion of the lesser charges (was) permitted * * * ." 43 Mich App 45, 50.

Fifth, defendant contends that he should be resentenced and a new presentence report should be prepared because the sentencing judge considered prior constitutionally infirm convictions contained therein. Defendant argues that use of these convictions at sentencing was contrary to *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), and that *People v Jones,* 47 Mich App 160; 209 NW2d 322 (1973), entitles him to relief on this point.

This Court's position in *Jones* was recently modified:

"Before this Court will grant relief in a *Tucker* petition, the appellant must first establish in separate post-conviction actions that the underlying convictions are invalid. In the instant case this required foundation has not been laid, the constitutional status of defendant's prior convictions not having been previously determined by an appellate process." *People v Gavin,* 50 Mich App 743; 213 NW2d 758 (1973).

We adhere to the holding in that decision, and deny relief on this point. However, we do so without prejudice to defendant's right to seek an appli-

cation for delayed appeal of those convictions. GCR 1963, 806.4.

Sixth, defendant alleges that various arrests which did not result in conviction were considered by the sentencing court. The mere awareness of pending cases against a defendant has been held not to be reversible error. In so holding, *People v Lotze,* 47 Mich App 460, 461; 209 NW2d 497 (1973), noted that a statement made by the trial court had failed to:

"disclose any opinion as to defendant's guilt or innocence in such cases, or that such knowledge was a factor in determining sentence."

While the instant sentencing court said that it had considered the presentence report, it did not express any opinion as to defendant's guilt or innocence in the alleged pending cases, nor does the record disclose that the sentencing court relied in any way on these arrests which did not result in conviction.

Case number 16288, defendant's conviction for breaking and entering with the intent to commit felonious assault, MCLA 750.110; MSA 28.305, is remanded to the trial court pursuant to our discussion of the res gestae witness problem. Our Court's retention of jurisdiction in that case is limited as indicated above. Defendant's conviction for assault with intent to commit great bodily harm less than murder, MCLA 750.84; MSA 28.279, case number 16287, is affirmed.

All concurred.